In re HOLLINS et al.

Appeal of EVERETT.

(Circuit Court of Appeals, Second Circuit. December 15, 1914.)

No. 63.

1. BANKRUPTCY ⊜140—OWNERSHIP OF PROPERTY—STOCK HELD BY BROKERS FOR CUSTOMERS.

Stockbrokers prior to bankruptcy purchased 280 shares of certain stock for various customers, a part of which they either hypothecated or loaned to other customers, leaving 100 shares in their possession when the petition in bankruptcy was filed. Thirty shares hypothecated with a bank were identified as those purchased for one of the customers. The stock in the brokers' possession could not be identified as that purchased for any particular customer. *Held,* that the customers were general creditors of the bankrupts and merely shared with all other general cred-

itors in the assets available for such creditors, except so far as they might be able to trace and identify by reasonably specific proof their own individual property or its substitute or proceeds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ☞140.]

2. BANKRUPTCY ☞155—OWNERSHIP OF PROPERTY—STOCK HELD BY BROKERS FOR CUSTOMERS.

As there were claims to more than twice the number of shares in the bankrupt's possession even excluding the owner of the 30 shares hypothecated with the bank, the presumption, in the absence of proof to the contrary, that the brokers did their duty by buying other shares of like kind to replace customers' shares of which they had disposed, did not sufficiently identify the stock to justify an apportionment thereof among the customers in proportion to the stock purchased for them.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. ☞155.]

Appeal from and Petition to Revise Order of the District Court of the United States for the Southern District of New York.

This cause comes here on appeal from and petition to revise an order of the District Court, Southern District of New York. Petition in bankruptcy was filed against H. B. Hollins & Co., stockbrokers, on November 13, 1913. Prior to this date they had made the following purchases for customers of Amalgamated Copper stock: On October 25, 1912, for Bamberger, 30 shares; on October 30, 1912, for Duel, 100 shares; on February 25, 1913, for a firm, referred to on the briefs as Wieners, 50 shares; on October 28, 1913, for Landau, 100 shares. On the day petition was filed Hollins & Co. had "in the box"—that is, in their possession—100 shares. Of the remaining 180 shares, 30 had been hypothecated with the National Bank of Commerce, 50 had been hypothecated with the Kings County Trust Company, and 100 had been used to make deliveries under "short" orders for another customer; that is, had been loaned to that customer. After bankruptcy Duel and Wieners offered to pay their indebtedness on account with the bankrupts, Landau and Bamberger did not do so.

Duel petitioned for the allotment to him of 100/280 of the 100 shares of Copper in the possession of the receiver and Wieners asked for 50/280 thereof. The District Court granted this motion, holding in effect that Landau would have been entitled to 100/280 and Bamberger to 30/280 had it not been for the fact that they could not recover unless they paid the amount of their debit balance to receiver, which they had not offered to do. From this decision the receiver and the bankrupts appeal.

See, also, 212 Fed. 317; 215 Fed. 41.

W. C. Armstrong, of New York City, for petitioner.

F. W. Longfellow and Stuart McNamara, both of New York City, for respondents.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge. Judge Hough apparently made this disposition of the matter, because he was satisfied that the decision of the Supreme Court in Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690,

57 L. Ed, 1047, required him to do so. He did not do so because the 100 shares in the box were identified by the testimony, for he says: "for which particular customer these 100 shares were held does not appear and cannot be ascertained." Applying what is called the "grain in a bin" theory, he reached the conclusion that all claimants to Copper stock were entitled to share ratably in these 100 shares. Examining the record, especially the book entries in Exhibit A, we find much force in the contention of appellants that at the time of the bankruptcy 50 of Landau's shares were hypothecated with the trust company, Duel's 100 shares had been used for delivery under a "short" order, i. e., loaned to the "short" customer, and 50 of Landau's shares and Wieners' 50 shares were in the box. But it is not necessary to decide that question; Landau is making no claim that this particular certificate for 100 shares is his property.

[1] It may be noted that all four claimants are general creditors of the bankrupts, and it has been repeatedly held that they merely share with all other general creditors in the assets available for such creditors, except so far as they may be able to trace and identify their own individual property or its substitute or proceeds. Unless reasonably specific proof of such identification is presented, equity would seem to require that the fund for general creditors should not be depleted on any theory which has not the sanction of controlling authority.

[2] The application of the theory followed in this case leads to this curious result. Bamberger was owing money to the bankrupts on his original purchase; his contract with them authorized them to pledge the stock bought for him. Shortly after purchase, a year before bankruptcy, the bankrupts borrowed money from the Bank of Commerce pledging his certificate for 30 shares as security. There it remained undisturbed till bankruptcy. The identity of this certificate as Bamberger's is conclusively proved; every one concedes that his 30 shares are represented by the certificate for that amount held by the bank. Nevertheless, under the theory now contended for, 30/280 of his 30 shares is also identified as a fractional part of another certificate for 100 shares; to that extent, 30/280, there would be a double identification.

We are not satisfied that the decision of the Supreme Court requires the adoption of a method of identification, which may lead to such results. The statement is made that the court held in the Gorman Case that:

"No identification is necessary—the presumption of restitution plus the physical presence of some stock supplies the link in the absence of countervailing proof."

But the facts in that case differed in a very material particular from those here presented. The bankrupt brokers in the Gorman Case had bought for him 250 shares of Greene Cananea Copper, they had disposed of his original certificate, but other certificates had from time to time found their way into the box, so that when they failed they held 350 shares of that stock and were under obligations to no other customer to account for any such shares. Upon the presumption that the brokers, in the absence of proof to the contrary, did their duty, buying other shares of like kind to replace customer's shares which they

had sold, identification of 250 shares, which belong to Gorman, was made out—the bankrupts had 350 shares free from any claim, except Gorman's to 250 of them. The Supreme Court says:

"It is said, however, that the shares in this particular case are not so identified as to come under the rule. But it does appear that at the time of bankruptcy certificates were found in the bankrupt's possession in an *amount greater* than * * * should have been on hand for this customer, and the *significant fact* is shown that *no other customer claimed any* right in those shares of stock." (Italics ours.)

In the case at bar, however there are claimants—even leaving out Bamberger, whose certificate is conclusively identified—to more than twice the number of shares found in the box. The facts are much the same as In re McIntyre, Petition of William Grace, 181 Fed. 960, 104 C. C. A. 424, where we held identification had not been shown. Grace claimed 200 shares of Southern Pacific stock, the bankrupts had 107 shares of that stock on hand or hypothecated and owed their customers 1,651 shares of the same variety of stock. The theory now relied on was submitted with petition for certiorari in the McIntyre-Grace Case, but certiorari was refused. Grace v. Burlingham, 218 U. S. 672, 31 Sup. Ct. 221, 54 L. Ed. 1204. We are not persuaded that the decision in the Gorman Case requires a modification of the rule followed in the McIntyre-Grace Case. The rights of general creditors are likely to be seriously impaired if the theory of constructive identification based on presumptions of intent be carried to the extent here asked for.

The order is reversed.