In re LATHROP, HASKINS & CO.

FINLEY et al. v. HOTCHKISS.

(Circuit Court of Appeals, Second Circuit.   May 13, 1915.)

No. 137.

1. BANKRUPTCY ⊜⇒328—CLAIMS—TIME FOR FILING—LIMITING TIME.

Bankrupt stockbrokers, a few hours before the filing of the petition, transferred to a bank, as security, certain securities belonging to their customers, which the trustee recovered from the bank on the ground that the transfer was a preference.   The trustee, before such recovery, presented a petition stating that there were in his possession stock, bonds, etc., for which proceedings to reclaim had been brought, and that creditors of the bankrupt might assert claims to some of such securities "or other assets of this estate."   The court thereupon made an order to show cause why an order should not be made directing claimants and creditors to file notice of their claims before a certain date, or be barred from asserting any claim to "said stocks, bonds, or other securities, or the proceeds thereof, or other assets of the estate," and subsequently made an order, directed to certain creditors by name and to all other claimants and creditors making any claim to any of the stocks, bonds, securities, or assets belonging to the estate, or in the possession of the receiver, or to the proceeds thereof, requiring them to file such claims before a day fixed, appointing a special master to determine all such claims, and providing that all claimants not filing notice of their claims should be forever barred from making any claim to the stocks, bonds, or securities of the estate, or the proceeds thereof, except that this should not bar them from filing proofs of claim as general creditors.   The owners of the securities so pledged to the bank gave no notice of their claims for nearly four years after the time limited, and until the trustee had recovered such securities from the bank.   Held, that the orders of the court applied to claims to such securities in the possession of the bank, as well as to securities in the possession of the receiver or trustee; the order to show cause expressly referring to securities in the possession of the receiver, or to which he or any trustee thereafter appointed might be entitled.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⊜⇒328.]

2. BANKRUPTCY ⊜⇒328—CLAIMS—TIME FOR FILING—LIMITING TIME.

The court, in the exercise of its equity jurisdiction, had inherent power to limit the time for the presentation of such claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⊜⇒328.]

3. BANKRUPTCY ⊜⇒328—CLAIMS—TIME FOR FILING—LIMITING TIME.

Bankr. Act July 1, 1898, c. 541, § 57n, 30 Stat. 560 (Comp. St. 1913, § 9641), providing that claims shall not be proved subsequent to one year after the adjudication, implies that creditors may file claims at any time within the year, and the court cannot fix a time for general creditors to file their claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 518; Dec. Dig. ⊜⇒328.]

Ward, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern District of New York.

This cause comes here on an appeal from an order entered on the 19th day of August, 1914, dismissing intervening petitions to recover

from the trustee in bankruptcy certain stocks, bonds and other property.

See, also, 231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115.

On and prior to January 19, 1910, Henry Stanley Haskins and Henry S. Leverich were conducting the business of stockbrokers as copartners in the city of New York, state of New York, under the firm name of Lathrop, Haskins & Co. An involuntary petition was filed on January 19, 1910, in the United States District Court for the Southern District of New York praying that the firm of Lathrop, Haskins & Co. be adjudged bankrupt; and on the day aforesaid Henry D. Hotchkiss was appointed receiver in bankruptcy of the said firm; and on April 18, 1910, the said Hotchkiss was elected the trustee in bankruptcy and duly qualified.

On February 7, 1914, Frederick W. Finley, Genevieve A. Vedder, Gustave S. Boehm, Robert Flanagan, Emma G. Osborne, Catherine S. Leverich, and Annie F. Leverich, trustee, filed reclamation petitions in the bankruptcy proceedings of Lathrop, Haskins & Co., seeking to reclaim certain stocks and bonds. The petitioners had notice requiring claimants to file their claims on or before May 1, 1910, but they did not comply with the order. Six of the seven petitioners, however, filed general proof of claim in bankruptcy. There is no dispute of fact in the case, the petitioners' entire case having been submitted on stipulations to the special master to whom the petitions had been referred.

Pruyn & Whittlesey, of New York City (Charles P. Howland and Robert Forsyth Little, both of New York City, of counsel), for appellants.

Abram I. Elkus and William A. Barber, both of New York City (Abram I. Elkus and William E. Collins, both of New York City, of counsel), for appellee.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above).  [1] This is a suit brought against a trustee in bankruptcy to recover certain securities which had been deposited by the bankrupt brokers with a New York bank to secure their indebtedness to it. The securities involved were delivered by the bankrupt brokers to the National City Bank of New York between 2 and 3 o'clock in the afternoon of the day on which the brokers at noon had suspended business, an involuntary petition in bankruptcy having been filed against them about 4 o'clock on the same day. On the morning of that day the bank had made a clearance loan to the brokers of $500,000 to enable them to meet current obligations. The officers of the bank later in the day demanded securities from the brokers to make good their obligations to the bank, and were informed of their suspension and that a petition in bankruptcy would be filed. After considerable discussion the securities in question were turned over to them, but with the statement that the bank was thereby obtaining a preference. This was on January 19, 1910. On May 6, 1910, the trustee in bankruptcy commenced an action against the bank to recover the securities thus transferred. He obtained judgment in the District Court (200 Fed. 287, 299 [1911–1912]), which was affirmed in this court (201 Fed. 664 [1912]). The case was then taken to the Supreme Court of the United States, which also affirmed it (231 U. S. 50, 34 Sup. Ct. 20, 58 L. Ed. 115 [1913]), and on January 21, 1914, the securities and dividends thereon were turned over to the trustee,

under the decree which required it to deliver the securities, with all interest and dividends, and in default thereof to pay $161,740.62. The trustee was allowed to recover back the securities on the ground that the bank at the time it received them had reasonable cause to believe that it was obtaining a preference.

On February 7, 1914, the petitioners herein filed their petitions against the trustee in bankruptcy, seeking to reclaim as their property certain of the stocks and bonds turned over to him by the National City Bank. The petitioners allege that, prior to the day when the brokers turned over these various securities to the bank, they had purchased through the brokers the shares of stock they now seek to reclaim, and that they were entitled to the possession of the stocks on the day they were wrongfully given to the bank. They allege they made a demand on the trustee on January 24, 1914, for the return of the shares and all dividends which had been paid on them, and that they at the same time tendered any balance which might be due from them to the bankrupts, and that the trustee refused to comply with the demand.

It appears, however, that on February 18, 1910, the court entered an order "to show cause why an order should not be made directing claimants and creditors to file notice of their claims on or before a certain date, or be forever barred from asserting any claims whatever to any right, title, interest, or lien in, to, or on said stocks, bonds, or other securities, or the proceeds thereof, or other assets of the estate." A copy of this order was mailed in accordance with its terms to all creditors and claimants. Thereafter, and on March 24, 1910, an order was made and entered which directed certain specified creditors named therein, "and all other claimants, creditors, or other persons" "making any claim to any of the stocks, bonds, securities, or assets of any kind belonging to this estate, or now in the possession of the receiver in bankruptcy, or to the proceeds of any of said stocks, bonds, or securities, to file such claims * * * on or before the 1st day of May, 1910."

Three of the present petitioners were included by name in the order, Genevieve A. Vedder, Frederick W. Finley, and Robert Flanagan. The remaining four petitioners, it is claimed, were included generally under the designation "of all other claimants, creditors, or other persons * * * making any claim to any of the stocks, bonds, securities, or assets of any kind." The order also appointed a special master, who was to hear and determine the rights of all such claimants, and who was directed in all respects to adjust, determine, and adjudicate the rights, titles, interests, equities, claims, and liens of all persons who should file with him any claim or notice of claim to any of the securities, and to report to the court his determination thereon. The order further provided that all claimants who did not file notice of their claims on or before May 1, 1910, should be "forever barred from making any claim or asserting any title or interest in or to any of the stocks, bonds, or securities of this estate or the proceeds thereof, except this order shall not be construed to bar any creditor from his right to file a proof of claim as general creditor against this estate within one year

after the order adjudicating the above named bankrupts." No notice of claim to the securities now sought to be reclaimed was given to the special master by any of the seven petitioners herein until the present petitions were filed in January, 1914, nearly four years after the time limited by the order had expired. The claimants waited until after the trustee recovered the securities from the National City Bank, and within three days thereafter came forward with their claims.

The District Judge has commented with some severity upon the course which the petitioners have pursued. It did not appear to him to be a case of candid dealing and fair play. The District Judge stated that what the petitioners did was quite deliberate and conscious:

"They declined to assert any rights at the time fixed; they allowed the trustee to assume that they had no rights, and to assert falsely, though innocently, that the securities were the property of the bankrupt; * * * they allowed him to employ counsel whose fees would in large measure be determined by the amount of the assets at stake; they took no steps to assert their own claims against the bank, independently, though they had unquestioned right to do so, at least those claimants whose assets were free; and they lay back, carried wholly at the risk of the estate for 3½ years and more, until the trustee brought them safe to port."

And he adds:

"That this was a shrewd stratagem does not seem to me to admit of the least doubt, in view of the claimants' total failure to give a scintilla of excuse. They saw the opportunity of using the trustee as their catspaw to bear all the risk of a doubtful litigation."

It is fair to say, however, that the case was tried on stipulations as to all material facts, and that the record contains no statement concerning concealment of claims. But the facts which the record discloses show that no notice of the claims was given, and that the trustee was allowed without notice to conduct the litigation without any assistance from these petitioners, who made known to him their asserted rights as soon as the securities reached his hands. The bare stipulated facts do not, however, prove sharp practice. But perhaps it is not altogether surprising that the District Judge inferentially concluded that a policy of "watchful waiting" had been deliberately adopted by the petitioners, and that such a policy was not proper under the particular circumstances of this case, and that, so thinking, he should have rebuked it.

Counsel rely upon New York Security & Trust Co. v. Lombard Investment Co. (C. C.) 75 Fed. 172 (1896). In that case the trust company had given the investment company an indemnity fund to guarantee it against loss on all loans made through its advice. This indemnity fund was to be returned to the trust company when the loans were paid. In the insolvency proceedings an order was entered requiring all persons "entitled to participate in the general assets of the insolvent" to prove their claims before a certain day. The trust company did not so prove its claim, but later intervened, asking for the return of the indemnity fund. It was held that the trust company could recover, on the ground that the order limiting the time to file claims did not apply to the indemnity fund. The court in its opinion said:

"The court had in mind the claims of creditors and stockholders 'entitled to share in the assets of the insolvent' estate. This fund, at the time of the sale, had not become an asset of the estate, because the purposes of the trust had not been subserved, so as to give the company any tangible, ascertainable, separate interest in the fund. As evidence of what was in the mind of the court, the decree declared 'that no person shall be entitled to participate in the general assets of the insolvent defendant who shall not present and establish his claim in accordance with this decree.' Under the contract in question, the rights of the respective parties in this fund cannot be ascertained and determined until the loans made through the bank shall be adjusted and wound up. Whether or not the bank shall be entitled to have all or any part of this fund and its proceeds returned to them will depend entirely upon the losses, if any, and the extent thereof sustained by the company on the loans made by and through the bank. Nor are these interveners in position to demand and receive this fund, or any part thereof, until they can establish the amount of the loss sustained in the transaction."

And it is therefore claimed in the case at bar that the securities involved in this proceeding were not included in the order made on March 24, 1910, as they were at that time in the adverse possession of the City Bank.

The first question to be decided is as to what the court below intended by its order. We are unable to agree with counsel in their claim that the order is to be construed as referring only to securities which were in the possession of the trustee at the time the order was made. There is no ambiguity about the order, and no reason for the claim that the order related simply to securities then in the receiver's possession. To give such a construction to the order is to ignore the fact that the order by its express language applied to all persons, except Caroline H. Midgeley, "making any claim to any of the stocks, bonds, securities, or assets of any kind belonging to this estate or now in the possession of the receiver," "or to the proceeds of any of said stocks, bonds, or securities." In view of this language it is impossible to say that the terms of the order related simply to securities in the then possession of the receiver. Moreover, the order directed the special master to determine "the amounts, if any, which any of the claimants who prove ownership to stock pledged in the various banks, but not sold by the banks, shall contribute to the losses sustained by those whose stocks were pledged to banks and sold out by the said banks under their rights as pledgers."

Any doubt as to the intended scope of the order, if any doubt be entertained, is removed by a perusal of the order to show cause and the petition praying for the order to show cause which led to the final order. The petition of the trustee states that there are in the possession, custody, and control of the petitioner certain stocks, bonds, securities, and other assets, and that various proceedings to reclaim have been instituted by various claimants; that it is desirable and necessary to sell the securities and distribute the proceeds among the creditors; that it is inadvisable to take such action until all rights to the securities are determined. It is then alleged that some creditors of the alleged bankrupt may assert claims to some of said securities or other assets of this estate.

And the order to show cause expressly refers to "stocks, bonds, securities, or other choses in action or assets of any kind which are now

in the possession of the receiver, or to which he or any trustee hereafter appointed may be entitled." And it proceeds to declare that the final order shall provide an injunction against the assertion of any further claims "to or on said stocks, bonds, or other securities, or the proceeds thereof, or other assets of the estate. The petition and order to show cause were mailed together to the petitioners and were received by them. They certainly must have conveyed to them an understanding of the intention to fix a limit upon the time within which any claims of any sort could be presented. And it seems to us indisputable that the petition, the order to show cause, and the order of March 24, 1910, taken together, clearly show that it was intended to bar all claims not presented within the period prescribed. It is a refinement we do not find at all persuasive to say that the order does not apply to the claims these petitioners are now undertaking to assert.

[2, 3] This brings us to inquire whether the District Court had the power to make the order of March 24th providing that all claimants who did not file "notice of claim to the said stock" on or before May 1, 1910, should be forever barred from making any claim or asserting any title or interest in or to any of the stocks, bonds, or securities of this estate or the proceeds thereof." In answering that question it is to be observed that the order expressly provided that it was "not to be construed to bar any creditor from his right to file a proof of claim as general creditor against this estate within one year after the order adjudicating the above named bankrupts." In other words, the order did not fix a time for general creditors to file claims against the estate. That the court could not have done as the Bankruptcy Act, in providing in section 57, subd. "n," that "claims shall not be proved against a bankrupt estate subsequent to one year after the adjudication," plainly implies that creditors shall be entitled to file claims at any time within the year. But the court sought by its order to require persons claiming stocks or bonds then in the possession of the receiver, or which might subsequently come into his possession, or into the possession of the trustee, to give notice of their claims within a time specified, or be barred of the right to recover them from the receiver or trustee. We are at a loss to understand why the authority of the court to make such an order should be denied. It is said that such an order is in effect a short statute of limitations, and that as such beyond the power of the court to establish. In making the order the court was in the exercise of its equity jurisdiction. The equity courts, in jurisdictions where the distinction between law and equity is maintained, while not bound by statutes of limitation not in totidem verbis applicable to equitable demands, have nevertheless from the earliest times asserted the right to adopt and apply statutes of limitation to cases over which their jurisdiction was concurrent with that of the courts of law. And in cases over which the courts of equity have exercised an exclusive jurisdiction they have acted upon the maxim "vigilantibus non dormientibus æquitas subvenit," and recognized laches as a defense peculiar to the chancery courts, and refused to grant relief to one who has unduly delayed the prosecution of his claim. And it has also been the practice of equity courts in appointing receivers to limit

the time within which claimants could assert a claim against the receivers so appointed. In the exercise of the right thus to limit rights of action the equity courts have not derived their power from any statute but have exercised an inherent power. It is too late in the history of these courts to challenge their right in this respect.

This court has in a number of cases recognized the right of the District Courts in the exercise of their equity jurisdiction to limit the time for the presentation of claims. For example, in Pennsylvania Steel Co. v. New York City Ry. Co., 198 Fed. 721, 741, 742, 117 C. C. A. 503, 523, 524 (1912), we assumed that such a right existed and said:

"Claims which, when presented within the time limited by the court for their presentation, are certain or are capable of being made certain by recognized methods of computation, should be allowed."

And again, in Pennsylvania Steel Co. v. New York City Ry. Co., 216 Fed. 458, 462, 132 C. C. A. 518, 522 (1914), we said:

"Of course some day must be fixed, and fixed by the District Court, so as not to delay distribution. In this case he did fix the time before which all claims must be filed against the City Company as December 10, 1907, and against the Metropolitan Company as January 15, 1908."

And we are also unable to see why the power of the court to make an order limiting the time within which those claiming the stocks herein involved were to file notice of their claim should be restricted to the stocks which the receiver had actually in his possession at the time the order was made, and not extended to stocks which he did not then actually possess, although having a right to obtain their possession and which he subsequently secured.

It may be conceded that the District Court had no power to determine in a summary proceeding rights to securities not in its possession. See First National Bank v. Chicago Title & Trust Co., 198 U. S. 280, 25 Sup. Ct. 693, 49 L. Ed. 1051 (1905). The right to adjudicate in rem interests in a fund depends jurisdictionally upon possession of the fund. Heidenritter v. Elizabeth Oil Cloth Co., 112 U. S. 294, 5 Sup. Ct. 135, 28 L. Ed. 729 (1884). The District Court in its order was not attempting to adjudicate the claims to the stock, but was only fixing a time limit within which persons claiming an interest in the stock should give notice of their claims. In a bankruptcy proceeding, and to facilitate the administration of the estate, it is important that a trustee should be informed of all hostile claims to any part of the estate, both that which has already reached his hands and that which is not at the time in his possession, but which he has a right to reduce into his possession. The District Court was therefore justified in making the order it did. That order left the claimants entirely free to proceed in any manner they might be advised to adopt. They were not restrained by the order from pursuing any remedies they thought they possessed. The order was made to protect the trustee against the very course of conduct which in fact the petitioners adopted. The petitioners did not attempt to recover the stocks from the bank. Indeed, as the stocks pledged were those of margin customers, the pledge as against them was valid, and they could not have maintained an action against it. The trustee eventually recovered the securities, because, as we have seen,

the delivery of them to the bank amounted to a voidable preference. The right to recover them was a right which the trustee alone could assert. The petitioners knew, or must be assumed to have known, that their rights would have to be worked out through the trustee. Surely it could be no hardship to them, therefore, to require them, as the court's order did, to give notice of their claims. The order was a reasonable one, and quite necessary if there is to be that expedition in winding up bankrupt estates which the Bankruptcy Act contemplates.

Order affirmed.

WARD, Circuit Judge (dissenting). In order to perform its duty of promptly winding up an estate in bankruptcy, the court has power to require claims against property in its possession to be made within a fixed reasonable time or thereafter to be barred. In re T. A. McIntyre & Co., 176 Fed. 552, 100 C. C. A. 140; Penna. Steel Co. v. New York City Railway Co., 198 Fed. 721, 741, 742, 117 C. C. A. 503; Pennsylvania Steel Co. v. New York City Ry. Co., 216 Fed. 458, 472, 132 C. C. A. 518. The proceeding in such cases is in rem. As between these claimants, the bankrupt, and the bank, the securities in question were lawfully hypothecated. The Bankruptcy Act, however, authorizes the trustee, and only the trustee, to avoid transfer if preferential. Sec. 60b. In this case he did not take any steps to do so until after the time fixed by the court for making claims had expired. Within that period there was nothing to show that any such proceeding would be taken or if taken would prevail. I think the order should not be held effective as to these securities, because they were not in the possession of the court within the time fixed for proving claims. It seems to me that it was beyond the power of the court to bar claimants before it had the res in its hands. Then, of course, a limit could be fixed within which adverse claims could be made, and reasonable conditions imposed as to contribution by claimants to the expenses of the proceedings to set aside the transfer. Such of the claimants as could not trace their securities in accordance with the rule laid down in our late decision (In re Hollins, 219 Fed. 544, 135 C. C. A. 312) could not recover. Except as to such claimants, if any, the order should be reversed.