UNITED STATES & MEXICAN TRUST CO. et al. v. KANSAS CITY, M. & O. RY. CO. et al.

(District Court, D. Kansas, First Division. February 21, 1917.)

No. 1262.

1. RECEIVERS ⬤➡146—RETURN OF BONDS—PERSONS ENTITLED.

Where the holders of railroad bonds loaned them to the company to enable it to pledge them as collateral to secure the purchase price of equipment, and during receivership in a suit to foreclose the deed of trust securing the bonds the indebtedness for equipment was satisfied and the bonds delivered into court, the original holders are clearly entitled to such bonds as they can identify by serial number as the actual bonds loaned by them.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256.]

⬤➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. RECEIVERS ☞146—RETURN OF BONDS—PERSONS ENTITLED—IDENTIFICATION.
  Where the original holders could not identify all the bonds by serial number, but it appeared that all bonds issued were for the same amount and could be distinguished only by the serial number, that more bonds were delivered to the court by the seller of the equipment than were claimed to have been loaned to the railroad company, and that there was no other claimant for any of those bonds, the holders are likewise entitled to bonds in an amount equal to those loaned by them above number they could actually identify.

  [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256.]

3. RECEIVERS ☞146—RETURN OF BONDS—CONTRACT FOR DELIVERY—PERFORMANCE DURING FORECLOSURE.
  Where a railroad company had made a contract with two construction companies, whereby the latter agreed to advance money to the railroad to pay interest on prior outstanding bonds and the railroad agreed to issue to them other bonds equal in amount to the interest advanced, and, after the construction companies had paid a large amount of interest for which they had received no bonds, a receiver was appointed in proceedings to foreclose the mortgage securing the bonds which the construction corporations were to receive, and a number of bonds were delivered to the court after the payment of an indebtedness which they had been pledged to secure, which bonds were claimed by no one except the construction companies under their contracts, equity and justice required that the bonds be delivered to the construction companies; the railroad being insolvent so that in no other way could the companies be reimbursed for their payment of interest.

  [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256.]

4. RECEIVERS ☞146—RETURN OF BONDS—CONTRACT FOR DELIVERY—OBJECTIONS—OTHER BOND HOLDERS.
  The holders of the other bonds of the same issue cannot object to the delivery of such bonds to the construction company, since they are entitled only to share equally with all other bonds of that issue in the proceeds of the sale of the mortgaged property, and that right is not diminished by the delivery of the bonds in accordance with the contract.

  [Ed. Note.—For other cases, see Receivers, Cent. Dig. §§ 253–256.]

5. JUDGMENT ☞735—ESTOPPEL—ISSUES CONCLUDED.
  An action by the construction companies in which they recovered judgment for the amounts advanced to them does not estop them from claiming the bonds in the foreclosure proceedings, where it appeared that that suit was brought on behalf of the railroad company and conducted by its attorneys to obtain the judgments as a basis for a suit for the appointment of receivers, that the railroad company's judgment therein, and that the issue of the right of the construction companies to the bonds under their contract was not presented in any way in that action.

  [Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1263, 1265.]

In Equity. Suit by the United States & Mexican Trust Company and others against the Kansas City, Mexico & Orient Railway Company and others to foreclose a mortgage given to secure corporate bonds in which a receiver was appointed and a decree of foreclosure and sale entered. On petition in intervention by Charles A. Young, as trustee in bankruptcy of the Union Construction Company, and another, to be declared entitled to certain bonds secured by the mortgage and in possession of the court. Petition granted.

Frank P. Sebree and Krauthoff, McClintock & Quant, all of Kansas City, Mo., for petitioners.

Haff, Meservey, German & Michaels and Lathrop, Morrow, Fox & Moore, all of Kansas City, Mo., for respondents.

POLLOCK, District Judge. The facts out of which this controversy arises, briefly stated, may be summarized as follows:

As pleaded in the bill of complaint filed for foreclosure in this case by the trustee for the first mortgage bondholders, the trustee had theretofore certified and there was outstanding entitled to participate in the security afforded by the first mortgage sought to be foreclosed 24,538 bonds of the denomination of $1,000 each, and in the decree of foreclosure heretofore entered the mortgage debt is estimated and stated to be, exclusive of interest, $24,538,000. However, as a controversy existed as to the exact amount of said mortgage indebtedness outstanding in good faith at the date of the entry of the decree, and, further, a controversy as to the ownership of certain of the first mortgage bonds certified and outstanding, said matters were at the date of the entry of the decree known to be reserved for future determination. In pursuance of such known reservation, and for the purpose of the determination of said questions, and the further question of what outstanding bonds might lawfully under the terms of the decree entered be employed in payment of the purchase price, Hon. H. C. Sluss was appointed special master to take the proofs and report to the court on said questions. In the taking of proofs and the making of said investigation, the following state of facts developed:

Of said 24,538 first mortgage bonds certified and outstanding, 2,930 bonds had been theretofore pledged as collateral security by the railway company to its promissory notes given in the purchase of equipment necessary to the continued operation of the railway, title to said equipment being retained under conditional sale contracts entered into between the parties by the concerns furnishing said equipment. Thereafter and during the pendency of the receivership, under orders of the court, said equipment claims were compromised and discharged by the payment of cash and the giving of the obligations of the receivers, which said obligations of the receivers, under the decree entered, were discharged out of the purchase price of the road, thus leaving said 2,930 bonds free in the possession of the receivers to be dealt with by the court as equity might require.

Subsequent to the receivership of the railway company, the Union Construction Company, being wholly insolvent, was duly adjudged a bankrupt, and Charles A. Young was made its trustee in bankruptcy. The International Construction Company, also being insolvent and wholly unable to pay its debts, was in due form of law adjudged a bankrupt, and intervening claimant Charles S. Jobes was duly elected trustee in bankruptcy of the property and estate of said bankrupt, all as by the National Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 544, provided.

The contentions here presented arise over the equitable ownership of 1,362 of said 2,930 bonds only, the remaining 1,568 of said bonds

240 F.—33

having been heretofore, by consent of all parties, canceled and retired by order of the court. As to said 1,362 bonds, the claims of the trustees in bankruptcy of the construction companies intervening herein are as follows:

At the time the pledge of collaterals was made with the equipment companies by the railway company, it borrowed from the Union Construction Company 80 of said bonds so pledged, and from the International Construction Company it borrowed 491 of said bonds. As to the remainder of said 1,362 bonds, the claims of the trustees of the construction companies are as follows: By virtue of certain contracts duly entered into between the railway company and said construction companies, it was agreed the construction companies should pay the interest maturing on certain bonds of the railway company theretofore issued and outstanding, and in return for so doing the railway company promised and agreed to turn over to the construction companies for each $1,000 of interest so paid one of its first mortgage bonds of the denomination of $1,000 and certain other property rights. In pursuance of said agreements, the Union Construction Company did pay interest accruing on bonds of the railway company outstanding to holders thereof in amount $94,380; hence that company became entitled to receive from the railway company 94 of its said first mortgage bonds at the date of the receivership herein. The International Construction Company did pay, in pursuance of its said agreement to so do, interest maturing on first mortgage bonds issued by the railway company and outstanding in amount $697,691, and was at the date of the receivership entitled to have and receive from the railway company in repayment of its first mortgage bonds 697. As the railway company is and was at the date of the receivership herein wholly insolvent and unable to respond in damages for its failure to deliver said bonds undelivered under said contracts, but now has in its possession the bonds in controversy herein, it is asserted by claimants equity will regard that as having been done which of right should have been done, and will decree payment in the manner provided in the contracts between the parties from the only source possible to be performed.

After taking of the proofs, on full hearing and consideration thereof, the able special master found and recommended the entry of an order upholding the claims of the trustees in bankruptcy of the construction companies so made to the 1,362 bonds now in dispute. To the reports of the master exceptions were filed by the trustee for the bondholders and by the Kansas City, Mexico & Orient Railroad Company, for which company the property was purchased by a purchasing committee at the sale made under the foreclosure decree. Thereafter, before hearing of said exceptions, by leave of court, the construction companies filed herein supplemental intervening petitions based on the grounds heretofore stated and prayed decrees awarding to them the 1,362 first mortgage bonds of the railway company out of the 2,930 bonds coming into the possession of the receivers of the railway company as heretofore stated, which said bonds are now in the possession of the clerk of this court; the remainder having by consent of all parties been canceled and retired.

To said intervening petitions the trustee for the bondholders, complainant herein, and the railroad company, purchaser at the sale, have answered, and the matter stands submitted for decree, and on exceptions filed to the reports of the special master.

It thus appears the claims of the trustees of the construction companies presented involve the ownership, beneficial use, and right to possession of first mortgage bonds made, executed and issued by the railway company, duly certified by the trustee for the bondholders, and lawfully outstanding at the date of the receivership, comprised in three classes, namely: (A) 274 of said bonds claimed by the International Construction Company, definitely identified by their several serial numbers, which said bonds were borrowed by the railway company from said construction company for the purpose of pledging the same with the equipment companies to secure an indebtedness of the railway company thereto, which said indebtedness has been fully paid, the pledged bonds released, and now held free in the hands of the court to do therewith as equity may require. (B) 80 like bonds borrowed by the railway company from the Union Construction Company, and 217 bonds borrowed by the railway company from the International Construction Company pledged, released, and now free in the hands of the court, under like conditions in every respect as the bonds falling in class A save and except the same are incapable of identification by their several serial numbers. (C) 792 bonds free in the hands of the court to either cancel as unclaimed by any one or to award to the construction companies in settlement of their demands made, as heretofore stated, if in equity and good conscience it should be so decreed.

Coming now to the merits of the above claims and the defenses interposed thereto, it may be said:

The facts in so far as the merits of the matters presented are concerned are wholly undisputed. In so far as any defense interposed by the trustee for the first mortgage bondholders may go, it is manifest said trustee has no personal interest whatever in the controversy; it occupies merely a representative capacity. It is trustee for the bonds here in dispute as well as for all other bonds duly made and certified under the mortgage placed by the railway company on its property. All it asks, or can in justice demand, is that the court do equity to all.

In so far as the railroad company defending is concerned, it stands in the shoes of the parties who bought the property at the foreclosure sale as a purchasing committee. All it can ask is to be permitted to pay for the property purchased under the foreclosure decree and receive the same in the way and manner stipulated in the decree. Neither the bondholders' committee, with which the holders of the first mortgage bonds of the railway company desiring to participate in the purchase of the property deposited their bonds for such purpose, nor any other party in interest, if any, has appeared to contest the rights of claimants save and except as above stated.

[1] Coming now to the merits in so far as the 274 bonds comprising class A definitely identified by serial numbers are concerned, there

can be but little controversy these bonds were the absolute property of the International Construction Company loaned by that company and borrowed by the railway company for a special purpose. That purpose having been subserved, the bonds released, returned to the receivers of the railway company, and now in the hands of the court, must go to the trustee in bankruptcy of the owner as part of the assets of the estate in bankruptcy.

[2] As to the 80 bonds borrowed by the railway company from the Union Construction Company, and the 217 bonds borrowed by the railway company from the International Construction Company incapable of definite identification by the serial numbers thereon, or otherwise, except in so far as they are conclusively shown to be a portion of the 2,930 bonds pledged by the railway company in the purchase of the equipment, the question presented is this: Does the fact that claimants are unable to specifically identify these bonds by serial number preclude recovery by them? As has been seen, no one claims to own these bonds save the trustees in bankruptcy for the construction companies which loaned them to the railway company for the purpose of consummating its purchase of equipment. The indebtedness of the railway company to the equipment companies having been satisfied, and the bonds having been returned to the officers of this court, and being free in the hands of the court, shall they be canceled and the claims of interveners be denied merely because of the inability of the representatives of the owners to identify them more nearly than as a part of the mass of 2,930 bonds? That all of said 2,930 bonds, and in fact all of the 24,538 bonds made by the railway company, certified by the trustee and outstanding for value at the date of the receivership, are identical in terms, denomination, and secured by the same mortgage, is conceded; the only point of difference, and the only identifying marks thereon, being the serial numbers placed thereon. In such case, I am of the opinion further proof of identification than that they form a part of the mass of 2,930 bonds is not indispensable to a recovery by the true owners.

This proposition is conclusively established by recent decisions from the Supreme Court. Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981; Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047; Duel v. Hollins, 241 U. S. 523, 36 Sup. Ct. 615, 60 L. Ed. 1143. Indeed, the precise and pivotal question ruled by the Supreme Court in Gorman v. Littlefield, supra, was this question of identification of corporate paper. It is there said:

"It is therefore unnecessary for a customer, where shares of stock of the same kind are in the hands of a broker, being held to satisfy his claims, to be able to put his finger upon the identical certificates of stock purchased for him. It is enough that the broker has shares of the same kind which are legally subject to the demand of the customer. And in this respect the trustees in bankruptcy are in the same position as the broker. Richardson v. Shaw, supra.

"It is said, however, that the shares in this particular case are not so identified as to come within the rule. But it does appear that at the time of bankruptcy certificates were found in the bankrupt's possession in an amount greater than those which should have been on hand for this customer, and

the significant fact is shown that no other customer claimed any right in those shares of stock. It was, as we have seen, the duty of the broker, if he sold the shares specifically purchased for the appellant, to buy others of like kind and to keep on hand subject to the order of the customer certificates sufficient for the legitimate demands upon him. If he did this, the identification of particular certificates is unimportant. * * *

"The ground upon which the Circuit Court of Appeals decided the case seems to have been that the certificates were notes sufficiently identified; but, as we have said, they were on hand to an amount claimed by the appellant and more, and were not claimed by any other customer."

Thereafter a kindred matter of identification of corporate paper arose in the Hollins matter. The trial court, Judge Hough presiding, ruled as follows:

"This claim is the legitimate aftermath of Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047, if that decision logically follows Richardson v. Shaw, 209 U. S. 365, 28 Sup. Ct. 512, 52 L. Ed. 835, 14 Ann. Cas. 981, and Sexton v. Kessler, 225 U. S. 90, 32 Sup. Ct. 657, 56 L. Ed. 995. That there is such logical sequence Justice Day's opinion asserts, and it seems to me plain enough. All these controlling cases fully accept the 'grain elevator' doctrine respecting stocks, so that a customer who finds any stock of the kind he bought on his broker's premises can claim what he finds, for it is 'unnecessary * * * to put his finger on the identical certificates purchased for him.' This right is helped out by that 'presumption in favor of fair dealing' so much dwelt on in the higher courts, though said presumption is productive of cynic smiles even in counsel advancing the same in courts nearer real life— as it is seen in stockbrokers' shops." In re H. B. Hollins & Co. (D. C.) 212 Fed. 319.

From this decision an appeal was taken to the Circuit Court of Appeals and the holding of the trial court reversed. 219 Fed. 544, 135 C. C. A. 312. However, on appeal to the Supreme Court the decision of the Circuit Court of Appeals was reversed and that of the trial court upheld.

In Duel v. Hollins, supra, Mr. Justice McReynolds, delivering the opinion of the court, says:

"When the bankruptcy which occasioned Gorman v. Littlefield took place, the broker's box contained certificates, not specifically allotted, for 350 shares of the designated stock, and the appellant's claim for 250 was the only one presented by a customer. We held that under the circumstances no more definite identification was essential, and approved his contention. * * * The District Court properly awarded to appellants their pro rata parts of the 100 shares."

In the light of the foregoing decisions controlling here, it must be held the trustee in bankruptcy of the Union Construction Company is entitled to receive of the 2,930 bonds now in the hands of the clerk of this court 80 bonds in lieu of the 80 bonds loaned the railway company, and the trustee in bankruptcy of the International Construction Company 217 of said bonds in lieu of the 217 of like bonds loaned by it. This disposes of all the bonds in class B as above stated.

[3] Coming now to a consideration of the claims of interveners to the 792 bonds comprising class C, as above stated, as has been seen neither party defending against the rights of claimants have any interest in said bonds. Interveners are the only claimants thereto. Hence they must be either canceled and disallowed any participation

whatever with other outstanding bonds in the purchase of the property, or in the proceeds of the sale of the property in the hands of the court, or must be awarded to claimants under the contracts made between the construction companies and the railway company, which said contracts provided, among other things, as follows:

"Second. That the construction company will promptly pay all of the interest coupons which mature August 1, 1911, on any of said bonds of the railway company which it, the construction company, may sell or dispose of for cash or otherwise without detaching the coupons therefrom, to the end that the railway company will not be called upon to provide the money to pay any coupon maturing prior to and on August 1, 1911, on any of the bonds which the construction company may sell or otherwise dispose of.

"Third. That the railway company will sell and cause to be issued and delivered to the construction company enough of the first mortgage bonds of the railway company at par to reimburse the construction company for any interest maturing prior to and on August 1, 1911, which the construction company may pay on any of the bonds so sold by it, and will cause to be issued and delivered to the construction company with each bond five shares of preferred and five shares of the common stock of the railway company as fully paid, that is to say, for every thousand dollars ($1,000) of interest that the construction company may pay on said bonds so sold by it, the railway company will sell and deliver to the construction company one of its said first mortgage bonds of the denomination of one thousand dollars ($1,000) and five shares of its preferred and five shares of its common stock fully paid, and all money so paid by the construction company on account of any of said interest coupons shall be treated and considered in all respects as an additional cost of construction under the construction contract between it and this company."

A like contract existed between the railway company and the International Company.

That the construction companies did in performance of said contracts, and in reliance on receiving from the railway company bonds in return for the money so paid, is conceded. That the bonds now claimed were lawfully outstanding at the date of the receivership, and were at said date due and owing from the railway company to the construction companies, and are now free in the hands of the court to employ in satisfaction of the just claims of interveners, is not disputed. That there are no other claimants to said bonds, and that the railway company being insolvent in no other way can the just demands of claimants against the railway company be met, in whole or in part, is further conceded. Therefore why should not such disposition of that portion of the bonds claimed by interveners be made.

[4] In so far as other first mortgage bondholders, whether they are participating in the purchase of the property or are taking their pro rata share of the purchase price, they are not here resisting save through their trustee complainant in this suit, and, so far as they are concerned, it seems well settled the security afforded them by the property included in the mortgage foreclosed and heretofore sold is in proportion as the bonds by each of them held bear to the entire amount of first mortgage bonds outstanding for value in good faith at the date of the receivership.

In Claflin v. South Carolina R. Co. (C. C.) 8 Fed. 118, Mr. Chief Justice Waite says:

"The question is thus distinctly presented whether bonds then in the hands of the company, or which afterwards got there, could be issued or reissued so as to carry with them a lien under the first mortgage as against the second, This, as it seems to me, is a question of intention to be gathered from the language of the instrument, considered with reference to the surrounding circumstances and the subject-matter of the contract. I am aware that, ordinarily, a debt once paid is extinguished, and that, as a mortgage is but an incident of the debt it secures, if there is no debt there can be no mortgage. But here the point of the inquiry is whether the parties intended to apply this rule in all its strictness to the prior mortgage, about which they were contracting. Certain it is that, before the mortgage can be cancelled, the debt it purports to secure must be shown never to have been created, or, if created, extinguished within the meaning of the contract for security expressed in the mortgage. As against other bondholders secured by the same mortgage, I cannot believe there is a doubt of the power of the company to put out and keep out the entire issue up to the time the bonds become due. The contract with the individual bondholder is no more than that he shall have his due proportion of the security the mortgage on its face implies."

It is true the amount of cash required to be paid into court to satisfy the bid made by the purchaser at the foreclosure sale does depend on the number of bonds employed in making payment of the purchase price under the provisions of the foreclosure decree, but the right to employ outstanding bonds in making payment of the purchase price is a right of the bondholders themselves, and not a right of the purchaser. Its obligation is to pay cash for the property except in so far as the bondholders may elect to employ their bonds for the purpose of retaining an interest in the property sold instead of taking their pro rata share in cash.

Under the circumstances of this particular case and in view of the defenses interposed, without doing inequity to any party in interest, I am of the opinion justice may be done claimants by turning over to them the 792 bonds comprised in class C as above stated. That is to say, by turning over to the trustee in bankruptcy for the Union Construction Company as part of the assets of said estate 94 of said bonds, and by turning over to the trustee in bankruptcy of the International Construction Company 697 of said bonds, unless a matter to be further considered precludes recovery of any of the bonds involved in this controversy by claimants.

[5] It is the further contention of the parties defending against the relief prayed by intervening claimants, they are estopped from asserting the claims here presented, specific performance of the contracts made between the railway company and the construction companies for that said construction companies elected to proceed against the railway company in certain actions at law, and did recover judgments at law for the same indebtedness represented by the specific bonds sought to be recovered in this proceeding.

Examination of the petitions filed by the construction companies against the railway company in the law action shows that of the Union Construction Company to be in one count, based on a claim for money had and received by the railway company from plaintiff therein. The petition of the International Construction Company to be in two counts, the first founded on a promissory note made to plaintiff therein by

the railway company, and the second based on a claim for money had and received by the railway company from the plaintiff therein. No claim for the enforcement of the contracts made by the construction companies with the railway company for specific payment in bonds, or for borrowed bonds, was in issue in said case, as shown by the record. Conceding the right of one pleading and relying upon the doctrine of estoppel by election to show dehors the record what matters were actually put in issue, litigated, and determined in such action, yet the proofs in this matter leave no room for the application of such principle in this suit, for it is now clearly shown by the proofs the purpose of obtaining the judgments at law, which were confessed by the railway company in favor of the construction companies, was to form the groundwork for a suit in equity brought for the appointment of receivers for the railway company at the specific direction of the railway company. The same attorneys who usually represented the railway company also represented the construction companies. The bringing of the law actions by the construction companies was directed and caused to be carried on by counsel for the railway company. The construction companies had neither choice in the matter nor opportunity for exercising their own volition or election through independent officers or counsel. All done was dominated and controlled by those representing the interests of the railway company.

It follows from all the proofs, the defense of estoppel is inequitable and not made out.

It further follows, the exceptions of complainant trustee for the mortgage bondholders, and the Kansas City, Mexico & Orient Railroad Company, purchaser at the foreclosure sale, interposed to the reports of the special master, must be and are overruled and denied; that said reports, in so far as they deal with the subject-matter of this suit, be confirmed.

It further follows, the claims of intervening petitioners to the 1,362 bonds involved in this suit be allowed and confirmed; that decree enter awarding Charles S. Jobes, trustee in bankruptcy for the International Construction Company of Delaware, as part of the assets of said estate in bankruptcy, the 274 first mortgage bonds of the railway company bearing serial numbers 19,847 to 20,122, both inclusive. Also, further awarding to said trustee out of the 2,930 first mortgage bonds now in possession of the court 914 of said bonds, to be selected out of the 2,930 bonds by the clerk of this court, the serial number of each of said bonds so selected to be by the clerk kept and preserved of record; that the decree entered herein bear said serial numbers.

It is further ordered, the decree, out of said 2,930 bonds, award to the trustee in bankruptcy of the Union Construction Company, Charles A. Young, 174 of said bonds, to be selected by the clerk in like manner and on same conditions as is provided for the selection of bonds awarded the trustee of the International Construction Company. The bonds so awarded to be by the clerk of this court turned over and delivered to claimants on the entry of decree herein.

It is so ordered.