In re H. B. HOLLINS & CO.    In re EVERETT et al.    In re FIRST NAT. BANK et al.

(Circuit Court of Appeals, Second Circuit.    March 14, 1916.)

No. 126.

1. BANKRUPTCY ⊂⊃140(3)—PROPERTY—COLLATERAL SECURITIES.

When a bankrupt has pledged to secure a loan his own securities, securities of his customers rightfully, and securities of his customers wrongfully, the customers became sureties for him as principal to the lender, and the securities must be applied to the payment of the loan as follows: First, the bankrupt's; second, the customers' securities rightfully pledged; and, third, the customers' securities wrongfully pledged.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ⊂⊃140(3).]

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. BANKRUPTCY ⟨⟩140(3)—PROPERTY—COLLATERAL SECURITIES.**

Where a bankrupt repledged, as he had a right to do, securities pledged by several of his customers to secure several loans to him, the indebtedness of each customer is to be charged against the securities in the proportion of each customer's whole indebtedness to the bankrupt; and if any customer loses some of his securities on some of the loans, he is entitled to an equal amount of the surplus on other loans as against general creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. ⟨⟩140(3).]

Petition to Revise and Appeal from Order of the District Court of the United States for the Southern District of New York.

In the matter of H. B. Hollins & Co., alleged bankrupts. A petition by the bankrupts, asking that Crossman & Sielcken be required to pay over part of the proceeds realized from the sale of certain securities, was denied by the District Judge, and petitioners appeal. Affirmed.

See, also, 210 Fed. 965; 230 Fed. 917.

Beekman, Menken & Griscom, of New York City (W. C. Armstrong, of New York City, of counsel), for appellants.

L. B. Smith, of New York City, for appellees.

Before COXE, WARD, and ROGERS, Circuit Judges.

WARD, Circuit Judge. In April, 1913, Crossman & Sielcken borrowed $1,000,000 of Hollins & Co. and gave them as collateral $1,200,000 of the corporate 4¼ per cent. stock of the city of New York, agreeing that Hollins & Co. might rehypothecate the same for any larger sum they could obtain. November 13, 1913, a petition in bankruptcy was filed against Hollins & Co. and a receiver appointed. November 22, 1913, the court permitted Crossman & Sielcken to take up Hollins & Co.'s note to the Chase National Bank for $950,000 and the collateral securing it, which included among other securities $1,073,000 of their City stock and certain securities belonging to Hollins & Co. June 29, 1914, the court confirmed a composition offered by Hollins & Co. to pay their creditors in notes of the Equities Realization Corporation for the full amounts of their claims, but payable only out of the assets of the firm taken over by it.

April 21, 1915, Hollins & Co. filed a petition in the District Court sitting in bankruptcy asking that Crossman & Sielcken be required to pay over to them a part of the proceeds realized from the sale of the securities received from the Chase National Bank. The District Judge denied this petition, and upon a petition to revise his order we reversed the same without prejudice, on the ground that after confirmation of the composition the bankruptcy court had no jurisdiction as to assets not in its session. There were, however, before the confirmation of the composition, and now are, in the possession of the receiver, cash and securities turned over to him by the First National Bank and by the Equitable Trust Company after loans made by them to Hollins & Co. had been paid. Various claims for priority as to these funds were referred to a special master, and upon exceptions to his report decided by the District Court.

. The collateral in the case of the First National Bank loan of $175,-058.33 was Crossman & Sielcken's City stock, of the value of $57,-919.84, securities belonging to other customers, and some belonging to Hollins & Co. This loan was treated by the master separately, and as a result of computing the ratio Crossman & Sielcken's total indebtedness to Hollins & Co. bore to the total value of their hypothecated securities he charged $48,140 upon their securities in this loan, leaving an equity of $9,860 on which they were entitled to share pro rata in this surplus with other claimants whose securities had also been rightfully hypothecated. The surplus which remained after this was done, and all claimants of securities satisfied, he ordered to be paid to the receiver, who would have to account therefor to the Equities Realization Corporation, which is realizing the assets of Hollins & Co. for the benefit of the general creditors who accepted its notes under the composition.

. In the case of the Equitable Trust Company's loan of $50,000 secured by $30,000 of Crossman & Sielcken's City stock and certain securities belonging to Hollins & Co., there was a surplus of cash and the securities of Hollins & Co., all of which the special master awarded to Crossman & Sielcken. His two conclusions do not seem to us to be consistent. The surplus in each case should have gone to the same party, either to the receiver or to Crossman & Sielcken. Judge Hough awarded them in each case to Crossman & Sielcken, reversing the first and confirming the second order of the special master.

We are referred to but two authorities on the question of the relative standing of pledged securities belonging to the bankrupt and securities of his customers rightfully pledged, Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102, holds that the bankrupt's securities should share ratably with the customers', while United National Bank v. Tappan, 33 R. I. 1, 79 Atl. 946, holds that the bankrupt's securities must be first exhausted. We prefer the latter view.

[1] When a bankrupt has made a loan, and to secure the same has pledged his own securities, securities of his customers rightfully, and securities of his customers wrongfully, the customers become sureties for him as principal to the lender. The securities must in equity be applied to the payment of the loan as follows: First, the bankrupt's; second, the customers' securities rightfully pledged; third, the customers' securities wrongfully pledged.

[2] When a bankrupt, authorized to repledge securities of his customers, repledges them in several separate loans, as he has a right to do, the proportion of the customers' indebtedness to the bankrupt must be charged to these securities as between them and competing creditors, and is to be ascertained for each loan by charging the securities with their ratable proportion of the customers' whole indebtedness to the bankrupt. If, after all the customers have received the shares they are entitled to of the surplus, anything be left, it should go to the general creditors, except that, if it appear, as in this case, that a secured creditor has lost some of his securities in some of the loans, he should be credited on his indebtedness to the bankrupt with

their value in determining his share of the surplus as between himself and the general creditors.

In this case, as it appears that there is a surplus in the loan of the First National Bank and of the Equitable Trust Company in which no other secured creditor is interested, and that Crossman & Sielcken have lost City stock in some of the other loans in which the bankrupt pledged it of more value than the aggregate surplus, the District Judge was right in awarding the whole surplus to them. A true apportionment of the indebtedness of Crossman & Sielcken to Hollins & Co. shows that this surplus is the proceeds of their City stock.

The orders are affirmed.