### In re PIERSON et al.

### In re VAN THYN et al.

(Circuit Court of Appeals, Second Circuit. May 9, 1916.)

Nos. 107–109, 114.

1. BANKRUPTCY ⬦440—PROCEEDINGS—REVIEW.

A petition to revise is the proper means of procuring review of an order of the District Court in an omnibus proceeding by creditors to reclaim property in the hands of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915; Dec. Dig. ⬦440.]

2. BANKRUPTCY ⬦140(3)—BROKERS—RIGHTS OF CUSTOMERS.

Though it was the habit of bankrupt stockbrokers always to have enough stock on hand or hypothecated to cover all their customers who were long, customers who were long on the day of the failure cannot claim specific stocks on hand, on the presumption that such stock was intended to cover their transactions, where there was not sufficient stock in the brokers' box or hypothecated to cover all the long customers, though some did not assert any right to the specific stock.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 225; Dec. Dig. ⬦140(3).]

3. BROKERS ⬦29—RIGHTS OF BROKERS.

Where bankrupt stockbrokers, commissioned to purchase stock for a customer, never made the purchase, they are guilty of a conversion of the customer's money, and are liable for the full sum paid for the stock, instead of the value of the stock on the last day the Stock Exchange was open before the failure.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 22; Dec. Dig. ⬦29.]

Appeals from and Petitions to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the bankruptcy of J. Fred Pierson, Jr., and Clar-

---

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ence E. Fell, individually and as copartners doing business as J. F. Pierson, Jr., & Co. Hela Van Thyn and others appeal from and petition to revise an order (225 Fed. 889) determining the rights of various claimants in an omnibus proceeding to reclaim property in the hands of a receiver. Order modified as to one claimant, and affirmed.

Goldman, Heide & Unger, of New York City, for petitioners Van Thyn and others.

James Gillin, of New York City, for petitioner Gott.

Bayard L. Peck, of New York City, for petitioner Quinn.

Stanchfield & Levy, of New York City (W. M. Parke, of New York City, of counsel), for receiver.

Before WARD and ROGERS, Circuit Judges, and MAYER, District Judge.

WARD, Circuit Judge. [1] The parties thinking themselves aggrieved have, out of abundant caution, taken both an appeal and a petition to revise. The proper remedy is the petition to revise. In re Rose Shoe Manufacturing Co., 168 Fed. 39, 93 C. C. A. 461.

July 30, 1914, the New York Stock Exchange closed and did not reopen until December 12th. December 8, 1914, a petition in bankruptcy was filed against J. F. Pierson, Jr., & Co., stockbrokers, and a receiver appointed. The firm had borrowed of the banks upon securities belonging to the customers properly hypothecated, some of which, or their proceeds, were turned over to the receiver upon the liquidation of the loans. February 4, 1915, an omnibus proceeding was begun before a special master to determine the rights of various claimants thereto, and this is a petition to revise an order of the District Court by four of the claimants.

### Claim of Van Thyn to 100 Shares of Central Leather Stock.

May 18, 1914, the bankrupts bought for this customer 100 shares of Central Leather. On the day of the failure, December 8, 1914, there was a debit balance in his account of $1,256.43. On that day there were hypothecated with the banks 335 shares of the same stock, which covered all purchases for customers who were long of it. When the loans were closed out, the banks returned 235 shares to the receiver. Van Thyn, the only long customer making a specific claim for stock, tendered his debit balance and demanded 100 shares.

### Claim of Levy for 20 Shares of Southern Pacific Stock.

September 5, 1913, the bankrupts bought for this customer 20 shares of Southern Pacific stock. On the day of the failure they were long 200 shares hypothecated for loans and had one share on hand. When the loans were closed out, 60 shares and some cash were returned to the receiver. On the day of the failure Levy's account, after crediting him with the value of his collaterals, showed a credit balance of $1,-487.94, which he tendered to the receiver and demanded 20 shares of Southern Pacific stock, no other specific claim being made.

Claim of Quinn to 20 Shares of Westinghouse and 10 Shares of United States Steel Stock.

August 24, 1914, this customer delivered 20 shares of Westinghouse stock to the bankrupts as collateral for his marginal account. On the day of the failure the bankrupts were long 150 shares. When the loans were closed out, 50 shares were turned over to the receiver. Quinn, the only claimant for stock specifically, demanded 20 shares. July 30, 1914, he delivered to the bankrupts 10 shares of United States Steel as collateral. On the day of the failure they were long 921 shares. After the loans had been closed out there were delivered to the receiver 46 shares, against which Quinn's claim for 10 shares is the only specific claim. Upon the settlement of his account there was a balance to his credit of $265.

Claim of Gott to 20 Shares Sloss-Sheffield and 20 Shares National Enameling Company Stock.

October 6, 1910, the bankrupts purchased for this customer 20 shares of Sloss-Sheffield stock, for which he paid in full October 12th, leaving the same with them. October 14, 1912, the bankrupts purchased for him 20 shares of National Enameling Company stock. On the day of the failure Gott's account showed a debit balance of $608.71. Upon the liquidation of the loans this particular certificate for 20 shares of National Enameling Company stock was delivered to the receiver, together with 20 shares of Sloss-Sheffield, out of 40 shares which had been sold short.

Another customer, named Cochran, was also short 20 shares of Sloss, but made no specific claim. The value of Sloss stock July 30, 1914, when the Exchange closed, was $390.

The special master dismissed all the specific claims against the surplus stock on the ground that the claimants had identified no specific stock, and that no, or not sufficient, stock of the kind claimed was actually "in the box" at the time of the failure to cover them. He understood this to be the effect of our ruling in Re Hollins, 219 Fed. 544, 135 C. C. A. 312, as to the meaning of the decision of the Supreme Court in Gorman v. Littlefield, 229 U. S. 19, 33 Sup. Ct. 690, 57 L. Ed. 1047. In the case of Gott he awarded to him the 20 shares of Enameling Company stock which had been identified, upon payment of his debit balance, less the value of the 20 shares of Sloss on the day the Stock Exchange closed, viz., $390.

Judge Learned Hand confirmed the report of the special master.

[2] It was proved that the habit of the bankrupts was always to have enough stock on hand, or hypothecated, or short, to cover all their customers who were long; but there is no evidence of how often they were in and out of the particular stocks in question, and whether at all time since the date of purchase all long customers were so covered.

We do not think the rule in Gorman v. Littlefield should be restricted to stock actually in the box on the day of the failure. The reason for the rule would be exactly as cogent if the stock were in some one

else's box on that day, or if after that day stock or proceeds of stock hypothecated should be returned to the receiver. The rationale of the decision is that if the receiver has enough, or more than enough, of the particular stock to cover all customers who were long on the day of the failure, then the presumption that he intended to keep their stock on hand is a sufficient identification of the stock, or of so much of it as is needed, as theirs. If, however, the stock on hand, though sufficient to cover all actual claims, is not sufficient to cover all the long customers, no such presumption arises.

The fact that some of the long customers make no specific claim for stock in the surplus cannot enlarge the rights of one who does. In none of the claims now under consideration was there enough stock on hand to cover all the customers who were long; therefore the order of the District Court was right.

[3] The Gott claim presents an additional question, viz., whether he should be credited with $1,092.50, which he paid for the Sloss stock October 13, 1910, or with $390, which was its value July 30, 1914, the day the Stock Exchange closed. If the bankrupts never bought the stock at all, they were then and there guilty of converting his money, and were liable to him for the full sum paid, with interest. There is no evidence that the bankrupts did buy the stock. Judge Hand, in his memorandum refusing Gott's motion for a reargument, does say that on the day of the purchase the bankrupt sold the same amount of stock for another customer, which would be a valid execution of his order. But we find nothing in the record to sustain this statement. Therefore the order must be modified, to credit Gott with $1,092.50, with interest from October 13, 1910, to the day of the failure, after deducting the amount of his debit balance, $608.71.

As so modified, the order is affirmed.