### In re STRINGER.

(District Court, E. D. New York. June 9, 1916.)

1. BROKERS ⬥⟲35—RIGHTS OF CUSTOMERS.

Where a broker pledged stock belonging to a customer, who was indebted and had not furnished sufficient margins, such customer cannot complain, where on sale of her stock she was credited with the proceeds, which did not defray her debt.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 27; Dec. Dig. ⬥⟲35.]

2. BROKERS ⬥⟲26—RIGHTS OF CUSTOMERS.

The sister of a stockbroker, to aid in his financial difficulties, delivered to him securities. The broker pledged those securities, together with securities belonging to his customers, and after sale by the pledgee a surplus remained. The pledge of the customers' securities was as to them unauthorized. *Held* that, as the broker's sister could only claim the proceeds of her securities to the extent that, as against general creditors, the broker might have set them aside for her benefit, and as the securities belonging to the customers could be traced into the surplus, their right to such surplus is superior to hers.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 20; Dec. Dig. ⬥⟲26.]

3. BROKERS ⬥⟲26—PLEDGES—DISPOSAL.

Where a broker pledged securities belonging to his customers, and the pledgee disposed of such securities, receiving a surplus, the rights of the customers in such surplus will be measured as if the sales occurred at the same time, though they were made on succeeding days.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 20; Dec. Dig. ⬥⟲26.]

⬥⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

On hearing after reference for the hearing of further evidence. Former opinion affirmed, and further orders made.

For former opinion, see 230 Fed. 177.

James E. Duross, of New York City, for claimant Richardson.
Henry M. Stevenson, of New York City, for claimant Lewis.
Frederick W. Stelle, of New York City, for claimant Graff.
Charles A. Hitchcock, of New York City, for claimant Nixon.
Leon M. Woodworth, of New York City, for claimant Spooner.
A. Gordon Murray, of New York City, for trustee in bankruptcy.

CHATFIELD, District Judge. Since the opinion rendered herein on the 7th day of February, 1916, a further reference has been supplemented by testimony taken in open court, in order to place upon the record the precise standing under which the various securities relating to the Graff, Richardson, Spooner, Nixon, Carpenter, and Lewis claims herein came into the hands of Stringer & Co., and under which they were held when they passed into the hands of Winslow & Co. as collateral security for Stringer & Co.'s loans.

[1] The four claimants, Graff, Spooner, Richardson, and Nixon, have entered into a stipulation by which these four claimants have agreed to waive all contention between themselves that any one has a claim superior to the claim of the others to the surplus of the stock disposed of by Winslow & Co. The net result of the further testimony taken goes to show that Mrs. Carpenter was at all times in debt to Stringer & Co., and that her stock, which came into the hands of Winslow & Co. and was sold, was insufficient, when credited to her account upon Stringer & Co's books, to balance that indebtedness. It is thus apparent that Stringer & Co. had the right to use her stock in lieu of the deposit of more collateral, and that, if Stringer & Co. gave her full credit on her general account for the amount realized from the stock, she would receive all that she could claim from the proceeds of the Winslow sale.

[2] It also appears that, while Mrs. Lewis is able to trace into the hands of Winslow & Co. the certificates of stock, which were delivered by her to her brother in order to help his needs and those of the firm of Stringer & Jewell, of which he was a member at the time the stocks were turned over by her, and which later remained in the hands of Winslow & Co. as collateral for transactions by Stringer & Co. (of which firm her brother became a member after the dissolution of the firm of Stringer & Jewell), and although these stocks were a part of those sold by Winslow & Co. in order to liquidate the indebtedness of Stringer & Co. to them, she has no right to the proceeds of that stock as against her brother's creditors, except in so far as this stock survived its use by her brother, or survived the possibility of application by him to his financial needs in the ordinary course of business.

In so far as the precise shares of stock or collateral have been traced into the hands of Winslow & Co., and back again into the hands of Stringer & Co. or of the trustee, and in so far as these particular shares which had come from Mrs. Lewis were unaffected by any acts which would constitute an estoppel against Mrs. Lewis and in favor

of the general creditors (that is, any acts from which the condition of the creditors had been improved through the right of Stringer & Co., to make use of this stock, but which benefit or improvement would be taken away from the general creditors if the stock were returned to Mrs. Lewis), it has already been held in the previous opinion that Mrs. Lewis would have been entitled to receive back her identical shares of stock from the trustee. But when Mrs. Lewis disposed of the control over her stock by giving it to her brother to use as collateral, and when this stock was so used, and when in the form of such collateral it was commingled with other stocks, or when the proceeds from these stocks were commingled and the total applied to the payment of indebtedness on behalf of Stringer & Co., then Mrs. Lewis loses the right to claim that her stock has (in its entirety) survived the risks of the transactions, or that she is entitled to claim more than a pro rata share of the proceeds of the transactions. She can claim these shares of stock only in the sense in which her brother might set them aside or hold them apart for her as against his general creditors. In this way she has a lien, to whatever extent she may be able to establish it, against the so-called Winslow surplus. But if her lien is defeated by the superior claims of other lienors, then her rights as against general creditors would make no difference.

[3] But when we come to consider the other four claimants, it is impossible and unnecessary to attempt to distinguish between them. Two of them signed a consent that Stringer & Co. might make use of any collateral held as security for the accounts of these customers. One of these creditors is the same creditor (Richardson) who has obtained a judgment in the state court in litigation which the trustee saw fit to conduct, upon a finding by that court that Stringer & Co. were wrongdoers and converted the stock of Richardson, when they used it as collateral with Winslow & Co. The other two claimants appear to have been indebted to Stringer & Co. (aside from the application of the stock in question) at certain times continuing down to the date when Winslow & Co. sold out the collateral, and when the proceeds of this sale were credited on Stringer & Co.'s books, so as to create a credit balance in favor of these customers on Stringer & Co.'s books.

Examination of the four accounts at earlier dates makes it apparent that at different times Stringer & Co. had the right to use the collateral then held in the hands of Winslow & Co. as security for the indebtedness of each of the four claimants. It would seem that a careful analysis of the books might show that at least two of these four claimants had a surplus, and that Stringer & Co. had no need to use their stock as collateral at the time it was deposited with Winslow & Co., but these are the claimants who consented to such use.

The effect of these consents signed by the claimants Richardson and Graff is seriously disputed by them, but all these questions can now be dismissed, for the stipulation entered into between the four makes it unnecessary to apportion the fund other than according to the amount of their claims, as they all are entitled to receive the fund as against the general creditors, in such proportions to the net balance of each creditor (after being credited with the amount of benefit received from

Stringer & Co. from that creditor's stock) as the surplus received from Winslow & Co. is to the total of these claims.

If any of these creditors had been indebted to Stringer & Co. for more than the value of their stock, at the time of the original deposits of their stock with Winslow & Co., or if the circumstances attending their claim had been such that the trustee in bankruptcy could defeat their alleged right to trace the proceeds of their stock and to claim those proceeds at the hands of the trustee, then he should have presented those facts, and the attorney for Mrs. Lewis certainly had the right to contest any of these claims in that sense. Even though by previous decision (as by the present memorandum) she was not given equal rights with the four claimants upon the basis on which their claims were reported by the special commissioner, she nevertheless had the right to attack each claim or to hold the trustee responsible if her own rights were affected by his action. She should have had notice of the various steps and hearings in the proceeding, and if she were able to defeat any of the four claimants, and there should be a surplus after the payment of the remaining claims, then she might be entitled to some interest therein as against the trustee and the general creditors.

It is contended by the attorney for Mrs. Lewis that these four claimants cannot trace their respective stocks as an entirety into the proceeds of the collateral by Winslow & Co., and that no one of these claimants can show that at all times Stringer & Co. were bound to hold it intact, and not to substitute other collateral in its place. These claims seem to be correct. It is also contended by the attorney for Mrs. Lewis that the four claimants have not only failed so to do, but it is also urged by her that these four claimants cannot claim the surplus of the entire fund as created by Winslow & Co. upon the sale of the collateral. She contends that each of the claimants must trace his particular stock as an entirety into the surplus, and also, if any particular stock were wiped out by Winslow & Co. and the proceeds applied to the general Stringer indebtedness, to the extent of paying it in full, that the remaining stock, which had escaped such application, would be free from the claims of those whose stock had been previously used.

These contentions were sufficiently disposed of in the previous memorandum, and the court sees no reason to change its opinion from that then expressed. The claimants will be held to have equal rights, in looking upon the surplus from the Winslow & Co. transaction as the proceeds of one sale of all the Stringer collateral, even though some of the items were disposed of upon succeeding days. The court will also hold that none of the four claimants (Graff, Nixon, Spooner, and Richardson) have been shown to have so lost the right to share in the surplus of their stock after application by Winslow & Co. that they cannot obtain the benefit of Mrs. Lewis' stock when used to make that collateral sufficient.

The proceeds in the hands of the trustee from the Winslow & Co. transaction will therefore be divided pro rata between the claimants Graff, Spooner, Nixon, and Richardson. Mrs. Lewis will be held to have only a general claim of debt from the sale of her stock against such funds as may be liable therefor.