### In re IRVING WHITEHOUSE CO.

(District Court, E. D. Washington, N. D.　July 18, 1923.)

No. 3812.

1. **Bankruptcy ⟐⟐140(3)—Creditors having equal equities are in same class.**

　　Creditors of bankrupt stockbroker having equal equities are in the same class, and omission of some to make specific claims to stocks does not enlarge rights of such as do make claims, as claimants must recover on strength of their own titles.

2. **Bankruptcy ⟐⟐140(3)—Customers of bankrupt stockbroker who had fully paid and those who had only partially paid for securities held in same class.**

　　Where bankrupt stockbroker had pledged securities purchased for customers and securities deposited with it as collateral security, customers who had fully paid for their securities and those who had not stood in same relation to surplus proceeds of the pledged securities.

3. **Bankruptcy ⟐⟐140(3)—Customers of stockbroker holding particular security held in separate class.**

　　In adjusting rights of customers of bankrupt stockbroker, who had pledged securities purchased for customers, those customers holding particular security are in a class separate from holders of different security.

4. **Bankruptcy ⟐⟐140(3)—Customers entitled to share in proceeds of securities in proportion to securities held by them.**

　　Where bankrupt stockbroker had pledged securities purchased for customers, or deposited with it by customers as collateral, each customer was entitled to such pro rata part of surplus proceeds of securities of the kind owned by him as his securities bore to the total securities; any amount still due thereon being deducted.

In Bankruptcy. In the matter of the Irving Whitehouse Company, bankrupt. On review of an order of the referee on claims presented as preferred claims. Order set aside, and matter referred to referee.

"The bankrupt was a stockbroker, a greater portion of his business being marginal transactions. Upon an order for the purchase of specified securities and payment of not less than 20 per cent. of the purchase price, the bankrupt advanced the balance and held the security as collateral, obtaining the right to repledge the same, and thereupon borrowed from Hutton & Co., New York brokers, the necessary amount to complete the purchase, and repledged the security, it having on deposit with Hutton & Co. a considerable amount of security; and upon receiving an order to purchase listed

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

stock on the New York Exchange it was forwarded to Hutton & Co. in its own name, and its account debited, and the purchased security was added to the bankrupt's collateral, and the account of the customer was debited by the bankrupt to the difference between the marginal deposit and the purchase price. Some purchasers paid in full, and permitted the stock to remain with the bankrupt, who treated it in the same way as with Hutton & Co., while others deposited their security to cover the marginal deposit, which security was deposited with Hutton & Co. with the security purchased. Some securities indorsed in blank were delivered to the bankrupt for safe-keeping, or for sale, and the securities were forwarded to Hutton & Co. to bankrupt's account. When stocks purchased were paid for in full, the purchasers did not press for delivery, and the bankrupt, instead of redeeming such stock from the lien pledge, permitted it to remain with Hutton & Co. and for some time prior to adjudication the bankrupt converted and caused to be converted securities of customers to its own use. On August 3, 1921, a receiver was appointed for the bankrupt by the state court. On this day Hutton & Co. held as collateral deposited by the bankrupt $48,000, to secure an indebtedness of $37,690.01. The securities, upon the order of the court, were directed to be sold by the receiver, and the surplus, after the payment of the indebtedness due to Hutton & Co. from the bankrupt, was paid to the receiver—100 shares Loew's Theatre; 30 shares New Cornelia; Middlestate Oil, 52½ shares; Northern Pacific, 30 shares; 14 shares United States Rubber; 1 $1,000 Chile Copper bond, maturing 1932; 1 $1,000 Chicago, Milwaukee & St. Paul bond, maturing 1925; 25 shares Pure Oil; 5 Chicago, Rock Island & Pacific; 40 shares American Hide & Leather; 1 $2,000 International Telegraph, Sales & Engineering bond; 10 shares General Electric. The petitioners assert preferred claims against these several stocks. The trustee contends that the preferred claim should be denied, and the fund distributed to all of the creditors in proportion to their respective claims.

Danson, Williams & Danson, of Spokane, Wash., for trustee.

Graves, Kizer & Graves, of Spokane, Wash., for Ream, Connor, Woodland, and Mowers.

S. Edelstein, of Spokane, Wash., for Lantor.

Fabian B. Dodds, of Spokane, Wash., for Theis.

McCarthy, Edge & Lantz, of Spokane, Wash., for Stephens.

E. B. Quackenbush, of Spokane, Wash., for Collins.

Allen, Winston & Allen, of Spokane, Wash., for Lane.

Wakefield & Witherspoon, of Spokane, Wash., for Ackerman, Hodgman, and Howell.

NETERER, District Judge (after stating the facts as above). [1] Equity will treat alike those similarly situated, In re Toole (C. C. A.) 274 Fed. 342. Creditors of equal equities are in the same class, and the omission of some to make specific claims does not enlarge the rights of such as do make claims (In re Pierson, 233 Fed. 519, 147 C. C. A. 405), since the claimants must recover on the strength of their own title (In re Pierson, supra; Duel v. Hollins, 241 U. S. 523, 36 Sup. Ct. 615, 60 L. Ed. 1143; In re J. C. Wilson & Co. [D. C.] 252 Fed. 631). The securities "lacked individuality, and like fac simile storage for gold coin could properly be treated as indistinguishable tokens of identical value," when issued by the same obligor. Duel v. Hollins, supra.

[2-4] There are several classes of claimants, but I think, under the stipulation, those holding securities of the same class stand in the same relation to the fund which they claim. As between the claimants

there is no difference between the fully paid and the partially paid securities, since the sale in either event was complete and title vested, and unpaid securities being held as collateral does not change the status. It is unnecessary to determine whether Lane and Theis had traced their stock into the fund in issue, in view of the conclusion arrived at; the holders of a particular security being in a separate class. Duel v. Hollins, supra. Each petitioner is therefore entitled to recover the pro rata of the fund as the security held by him bears to the total of such security sold by the receiver issued by the same obligor. The holdings as per stipulation are as follows: Ackerman, Leow's Theatre, 100 shares; Stephens, New Cornelia, 30 shares; Wittmer, Middlestate Oil, 52½ shares; Mable Connor, Northern Pacific, 5 shares; Maud Mower, Northern Pacific, 23 shares; Lantor, Northern Pacific, 20 shares; Woodland, Northern Pacific, 15 shares; Hazel Mower, Northern Pacific, 5 shares; Rubber, 5 shares, 1 $1,000 Chicago, Milwaukee & St. Paul bond, maturing in 1925, 1 $1,000 Chile Copper bond, maturing 1923; Ream, Pure Oil, 50 shares; Hodgman, Chicago, Rock Island & Pacific, 5 shares; Theis, American Hide & Leather, 30 shares; Lane, $2,000; International Telegraph, Sales & Engineering bond; Howell, General Electric, 10 shares. The amount due from the respective holders of named securities which has not been paid shall be deducted from the amount due each and retained by the trustee. I do not think that Lane or others are estopped from asserting this claim, because they filed a general claim.

The order of the referee is set aside, and the matter is referred to the referee to make the computations, and order of allowance as indicated.