## In re IRVING WHITEHOUSE CO.

### REAM et al. v. McCREA.

(Circuit Court of Appeals, Ninth Circuit. November 5, 1923.)

### No. 4075.

1. **Bankruptcy ⬉451—Claim held not for a "debt" or "claim" within limitation on appellate jurisdiction of Circuit Court of Appeals.**

Customers of a bankrupt stockbroker, whose securities had been pledged by the broker, and who are seeking to recover from the trustee the proceeds of the securities, are not asserting a "debt" or "claim" in bankruptcy proceedings, under Bankruptcy Act, § 25a (Comp. St. § 9609), and an appeal will lie to the Circuit Court of Appeals, though the amount involved is less than $500.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Claim; Debt.]

2. **Bankruptcy ⬉439—Order based on stipulated facts reviewable by petition to revise.**

An order of the District Court, based on stipulated facts, may be reviewed by petition to revise.

3. **Bankruptcy ⬉140(3)—Nonconsenting customers of bankrupt stockbroker have claim to proceeds of pledged securities superior to consenting customers.**

Where a stockbroker, at the time of adjudication in bankruptcy held securities purchased for customers, those customers who had not consented to a pledge of their securities by the bankrupt had a preferred claim to the proceeds of the securities in the hands of the trustee as against customers who had given such consent.

4. **Bankruptcy ⬉140(3)—Bankrupt stockbroker's conversion of pledged stock placed equities of owners on par with equities of owners of securities pledged without authority.**

Where bankrupt stockbroker converted securities purchased for its customers on margin, so that their debit balances were converted into credit balances, the broker deprived itself of any right it previously had to pledge such securities, and the equities of these customers in the surplus proceeds of the pledged securities were on a par with those whose securities were wrongfully pledged at the outset.

5. **Bankruptcy ⬉328—Omnibus notice to file claims to specific fund held not to bar claims of general creditors.**

Under Bankruptcy Act, § 57n (Comp. St. § 9641), providing for proof of claims, publication of an omnibus notice requiring all claimants to the surplus proceeds of securities pledged by a bankrupt stockbroker to assert their claims by a certain date or be barred, did not bar the right of a creditor to file his claim as general creditor within one year of the bankruptcy order.

6. **Bankruptcy ⬉328—Court may require that claims to securities be filed by specified time or be barred.**

The bankruptcy court has power to require persons claiming securities in the possession of a bankruptcy trustee to give notice of their claims within a time specified or be barred of a right to recover them from the trustee.

---

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. Bankruptcy ⬅140(3)—Customers of bankrupt stockbroker having superior equities not required to make contribution for benefit of customers having inferior equities.**

Where a bankrupt stockbroker had wrongfully pledged securities purchased for customers or deposited with it as collateral, such customers having superior equities were not required to make contribution for the benefit of customers whose securities were rightfully hypothecated, or who failed to file claims.

Appeal from and Petition to Revise Order of District Court of the United States for the Eastern District of Washington; Jeremiah Neterer, Judge.

In the matter of the Irving Whitehouse Company, bankrupt. Petition by L. C. Ream and others against W. S. McCrea, as trustee in bankruptcy, for the allowance of preferred claims. The order of the referee was set aside, and matter referred to referee to make computations and order of allowance as indicated in opinion (291 Fed. 700), and petitioners appeal and petition to revise. Reversed and remanded, with directions.

Graves, Kizer & Graves, Wakefield & Witherspoon, Allen, Winston & Allen, Fabian B. Dodds, Joseph McCarthy, Samuel Edelstein, and E. B. Quackenbush, all of Spokane, Wash., for appellants and petitioners.

Danson, Williams & Danson, of Spokane, Wash., for appellee and respondent.

Before HUNT and RUDKIN, Circuit Judges, and BOURQUIN, District Judge.

HUNT, Circuit Judge. Appellants seek recovery from the trustee in bankruptcy of the Irving Whitehouse Company, corporation stockbrokers, of the proceeds of certain securities which had been pledged by the bankrupt company with Hutton & Co., stockbrokers in New York. The facts are agreed upon:

In August, 1921, the state court appointed McBroom receiver for the Whitehouse Company, then owing $211,000, and later he was appointed trustee in bankruptcy. When the receiver was appointed, petitioners had pending open accounts with the Whitehouse Company, which held certain securities which it had pledged with Hutton & Co. to secure advances made by that firm in buying and selling securities for the Whitehouse Company in New York, and the Whitehouse Company owed Hutton & Co. over $37,000. Hutton & Co. held collateral, including the securities of these petitioners, valued in excess of $48,000. Under order of the state court the receiver instructed the Hutton Company to liquidate the Whitehouse Company account, and Hutton & Co. sold all the pledged collateral, realizing a surplus in excess of $10,000 over the amount owed Hutton & Co., and in due course this sum was delivered to the trustee in bankruptcy. Of the collateral referred to as worth more than $48,000, only $1,414 was the actual property of the Whitehouse Company; the balance belonged to people who had paid their accounts with the Whitehouse Company in full, the greater amount being the property of the marginal dealers. It is agreed that

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the Whitehouse Company was under a duty to remove securities from the Hutton pledge, and to make delivery as soon as any customer paid his account in full.

Among these petitioners some had paid in full for their securities prior to August 3, 1921, when the receiver was appointed. One had refrained from paying a small balance because of some misunderstanding between himself and the Whitehouse Company. Several had not voluntarily paid the full purchase price of their securities, but prior to August 3, 1921, the Whitehouse Company converted to its own use such an amount of their securities, other than those involved in the present proceeding, that the amounts previously due it in each case had been converted to an indebtedness due from it to the several petitioners. One of petitioners delivered stock to the Whitehouse Company, with the understanding that the company was to loan it on petitioner's behalf to Hutton & Co., but gave no authority to the Whitehouse Company to pledge the stock as collateral on its own account. However, the stock was included by the Whitehouse Company in the Hutton & Co. pledge. The referee found that the petitioner Wittmer was a marginal trader, and on August 3, 1921, was indebted to the Whitehouse Company.

In January, 1923, a show cause order was issued by the referee, calling upon all persons with claims to the Hutton surplus to appear on February 5th and assert their claims. Personal service was ordered upon all known claimants. Publication was also ordered, and such service directed to be sufficient to bar all claimants who should not appear to prove an interest on the return day from asserting any rights to the fund. No one except these petitioners appeared. The referee awarded to each of them the full value obtained for their securities on the sale by the Hutton Company, with the following exceptions: Claims were made for 68 shares of Northern Pacific stock, but only 30 shares were in the pledge. Each Northern Pacific claimant was awarded his proportion of the price obtained for the 30 shares. Wittmer, petitioner and a marginal trader, was denied a share with the other petitioners, because the fund was not sufficient to satisfy claims of all petitioners, and because Wittmer owed the Whitehouse Company on his account and had authorized pledge of his stock.

The District Court reversed the referee's decision, and held that there should be applied to the payment of the debt due Hutton & Co., a pro rata share from each security, and that if the interest of the Whitehouse Company in any security was not sufficient to pay the pro rata of indebtedness of such security, the difference should be supplied from the interest of the owners of the remainder of such security. The petitioners felt aggrieved at the order, and, not being certain of the proper practice, proceeded by petition to revise and by appeal.

[1] The respondent trustee has moved to dismiss the appeal as to the several persons who seek recoveries for sums less than $500, for the reason that under section 25a of the Bankruptcy Act the amount involved must be $500 or over. But the matter involved is not a judgment allowing or rejecting a debt or claim of $500 or over in a bankruptcy proceeding; it arises by virtue of a proceeding of the lower court where a question arose in the exercise of the jurisdiction vested

in it in equity to settle the estate of the bankrupt. Proceeds of sale of stocks were turned over to the trustee. Petitioners asserted rights to have the proceeds so held applied in certain ways favorable to themselves, while the trustee took the position that petitioners were not entitled to the apportionment as prayed for.

[2] The question presented is one of law, upon stipulated facts, and we hold is appropriately for review by petition for revision. In re Flatland, 196 Fed. 310, 116 C. C. A. 130; Brainard v. Irwin et al., 291 Fed. 759 (July 16, 1923); Collier on Bankruptcy (13th Ed.) pp. 832, 833, 835. The appeal is dismissed. In re Pierson, 233 Fed. 519, 147 C. C. A. 405.

[3] In the distribution of funds, where the circumstances were analogous to those presented here, the courts have held that those whose securities have been wrongfully subjected to the risks of pledges should be awarded any surplus that may remain over after satisfying the lien of the pledgee, and that those who consented to the pledging of their stock should be awarded only so much as may remain after such others have been paid in full. Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, 28 Atl. 104, 21 L. R. A. 102. In re Mills, 125 App. Div. 730, 110 N. Y. Supp. 314, brokers pledged securities belonging to three certain customers, two of whom gave authority to repledge, but the other (Beach) did not. The pledgee satisfied its lien by selling all the securities of Beach, the customer who failed to give authority to repledge, and only a portion of the securities of the other two customers. In contentions with respect to the liens against property that survived, it was held that, when the bank to which the securities were repledged sold, Beach would have had a right to insist that all of the securities rightfully delivered to be sold to pay the loan before the Beach securities were resorted to, and that, if enough were realized from the other securities, the bank could not have sold the Beach securities, but would have had to deliver. The court said:

"In other words, it would have been the duty of the bank, had it been advised of the facts, to have sold the securities of the appellants Henck and Townsend before selling hers. This is what ought to have been done, and, inasmuch as a court of equity will consider that done which should have been done, it will now direct that the stocks of Henck and Townsend be sold and the proceeds turned over to her, in so far as it may be necessary to make good to her the loss which she sustained by the unauthorized sale of the 300 shares of the steel stock."

As an underlying principle the Circuit Court of Appeals for the Second Circuit approved the rule. In re Ennis, 187 Fed. 721, 109 C. C. A. 468.

The rule should be controlling as to the securities belonging to petitioners (Lantor, Hodgman, Maude Mowers, Ream, Woodland, Howell, and Stephens) who had paid the Whitehouse Company in full, and to whom, when full payment was made, the Whitehouse Company was under obligation to deliver the securities. Petitioner Ackerman, never having authorized a pledge of his stock for Whitehouse, is also brought within the protection of the principle stated.

[4] Petitioners Hazel Mowers, Mabel Connor, Lane and Theis are in a somewhat different situation. They were marginal traders, but it

is stipulated that before the failure of the Whitehouse Company it had misappropriated such a quantity of the securities of each of the petitioners just named as that their debit balances were converted into credit balances in their favor, and, furthermore, that the Whitehouse Company still retained the unconverted balance of the securities in the Hutton pledge. The broker Whitehouse Company, by its wrongful conduct, having deprived itself of any right to hold the securities in pledge, after the conversion the property of the customers will be regarded as held in pledge without authority, and therefore there are equities in favor of such customers which put them on a par with those whose securities were wrongfully pledged at the outset. In re Ennis, supra.

In the Ennis Case, Bamford, claimant, had been a marginal trader, and deposited with the brokers certain shares of Car Heating stock, 30 shares of Investment stock, and an undisclosed amount of Shoe Machinery stock. Before the broker failed he misappropriated the Shoe Machinery stock. The pledgee satisfied his loan by the sale of certain securities, including the shares of Car Heating stock, and turned over to the trustee in bankruptcy a surplus fund, and the shares of Investment stock. The District Court held that Bamford was entitled to recover all his stock, subject to the payment of his proportion of the burden of the loan. On appeal the court regarded the conditions named as meaning that, the relief being awarded to two classes of claimants for securities or proceeds, those claimants who were placed in class A were entitled by reason of superior equities to the specific restitution of their securities, or were awarded a lien on the surplus fund for the amount of the proceeds of the securities without contribution, except for expenses. But as the fund was insufficient to pay all the claimants upon the basis stated, claimants placed in class B, in receiving less than their proportionate share of the fund, were said to contribute to the burden of the loan. Bamford having been placed in class B, contended that he should have been put in class A. In approving the broad principle that superior right should be accorded to claimants whose securities were wrongfully hypothecated by the bankrupt over those whose securities were rightfully pledged, the court said:

"When a broker pledges, as collateral to his loan at a bank, securities left with him for safe-keeping or for sale, he is a wrongdoer from the outset, and while the bank may have the right to hold the securities, the claim of the owner, upon the satisfaction of the bank's demand, is of the highest equity. On the other hand, when a broker, acting under authority conferred upon him by a customer hypothecates his securities, the latter may, upon the adjustment of his account with the broker and the termination of the bank's demand reclaim his securities; but, as he has no ground for complaining that his securities were pledged, his rights are clearly inferior to the owner whose securities were wrongfully hypothecated."

The court then considered the rights of the parties with respect to the securities which Bamford placed in the hands of the bankrupt as security for his speculative account, and held that, so long as the bankrupt brokers filled their obligations to the customers, they had the right to repledge the securities pledged to them; but that, if the bankrupts converted to their own use the stocks of the appellant customers, which

they were carrying for them, or misappropriated the property deposited with them, they violated the duties which they owed them, and their right to use the securities for their benefit terminated. It having been proved that the conversion of Bamford's securities was sufficient to convert his debit balance into a credit balance without considering the value of the stock left in pledge, he was put in class A.

In the Wilson Case (D. C.) 252 Fed. 631, a marginal trader pledged with Wilson, a broker, a quantity of stocks. Wilson repledged all of them, and converted a portion, but not enough to liquidate the claimant's indebtedness to him, if the value of the other securities which had been hypothecated, but not converted, was left out. That case differs, in that here it is stipulated that the conversion of the securities of the petitioners was great enough to extinguish the debit balance due from each of them. The views of the court are summarized in this way:

"First. As between securities hypothecated with authority and those hypothecated without authority, obviously the latter have the superior equity; second, where securities are hypothecated without authority, or, though hypothecated with authority are in part subsequently converted, the securities remaining stand on equal equities provided that, as the result of the conversion of securities originally rightfully hypothecated, the restatement of the whole account shows a credit balance in favor of the customer; third, where securities have been rightfully hypothecated, and there has not been any conversion of any of such securities, then the equity of a customer owning such securities is inferior to that of customers owning securities as described in paragraphs first and second."

The following cases were cited: In re Hollins, 232 Fed. 124, 146 C. C. A. 316; In re Stringer (D. C.) 230 Fed. 177; In re Stringer (D. C.) 233 Fed. 799; In re Toole (C. C. A.) 274 Fed. 337, 24 A. L. R. 470; Harmon v. Sprague, 163 Fed. 486, 90 C. C. A. 32.

Identification of the petitioners' securities in the Hutton pledge has been sufficient, and a majority of the other securities pledged by the Whitehouse Company being the property of marginal traders who authorized the Whitehouse Company to deal in their property as outlined, the present petitioners, with relation to the fund, are in a position where they may assert equities.

[5, 6] Respondents contend that no advantage should accrue by reason of the petitioners' vigilance. The order to show cause is not to be construed as a bar to a creditor of his right to file a proof of claim as a general creditor against the estate within one year after the order adjudicating the above-named bankrupts (section 57, subd. [n], Bankruptcy Act [Comp. St. § 9641], providing for proof of claims), but it is within the power of the court to require persons claiming stocks and bonds in possession of the receiver, or which might come into the possession of the trustee, to give notice of their claims within a time specified, or be barred of a right to recover them from the receiver or the trustee. Penn. Steel Co. v. New York Ry., 198 Fed. 721, 117 C. C. A. 503. As held by the court in Lathrop v. Haskins, 223 Fed. 912, 139 C. C. A. 392, the court could not determine in a summary proceeding, rights to securities not in its possession, but it could fix a limit of the time within which persons claiming an interest in the stock should give notice of their claims. In re Ennis, 198 Fed. 381, 117 C. C. A. 257; In re Gay et al. (D. C.) 224 Fed. 127.

[7] Respondents argue that petitioners should bear the burden equally with other persons whose securities were included in the Hutton Pledge, and that there must be equal contribution among all such persons, and that, if the owners of the other securities failed to appear, their interests in the funds should pass to the trustee, and cite Duell v. Hollins, 241 U. S. 523, 36 Sup. Ct. 615, 60 L. Ed. 1143. That case is authority on identification of securities in the pledge, but is not decisive of equities of those who have traced their securities in the pledge. The stock there found was insufficient to cover the claims of certain customers. The court held that each claimant could recover the value of such a number of shares as the amount he was entitled to bore to the amount the long customers were entitled to. It seems to us that there is a distinction to be observed, where, as here, petitioners, with the exception of Wittmer, are persons whose securities were wrongfully pledged with the Hutton Company, or were converted as already explained. Again, we have here a surplus of more than sufficient to satisfy all such claims. Claims of contribution are therefore unnecessary.

In re Toole, 274 Fed. 337, 24 A. L. R. 470, is not directly in point, for there Foster, a marginal trader, discovered, upon the failure of the broker, that certain of his securities had been pledged. The pledgee did not sell all the collateral that he held, but, after paying the amount of his lien, delivered to the trustee a surplus fund, together with certain securities, including the stock of the marginal trader, Foster, who then brought suit to recover. It was held that Foster's claim should be consolidated with others, as the mere chance that his property had survived ought not to put him in a better position than those whose property had been pledged with his under like circumstances, but had been sold, and also decided that, if it should appear that there were others with the same equities, yet the fund was insufficient to pay all claims, joint contribution should be had. The court in its discussion said that, if the stock of A. is lawfully pledged and that of B. and C. unlawfully pledged, there is no obligation on the part of B. and C. to contribute, for there is no common burden between A. on the one side and B. and C. on the other. The principle that joint contribution may be enforced applies only in cases where the situations of the parties are equal, as "equality among persons whose situations are not equal is not equitable."

Petitioners have identified their properties in the pledge. No persons except those now before the court have claimed any interest in the fund here involved, in that they did not appear in response to the show cause order. Petitioners, therefore, are not bound to deliver to the trustee, and thus put themselves in the attitude of contributing jointly in bearing the burden of the pledge with those whose equities are inferior to theirs. It follows that the trustee cannot claim more than could the other customers whose equities are inferior.

The order appealed from is reversed, and the proceeding is remanded, with directions to proceed in accordance with the views herein expressed; the claim of Wittmer against the fund to be classified as inferior and subject to the claims of the other petitioners.

Reversed and remanded.