## BOWMAN et al. v. MacPHERSON et al.
## In re WALTON et al.
## No. 1528.

Circuit Court of Appeals, Tenth Circuit.
Dec. 20, 1937.

Harry S. Bowman, of Santa Fé, N. M., for appellants.

Dudley Cornell, of Albuquerque, N. M., for appellee.

Before LEWIS, PHILLIPS, and BRATTON, Circuit Judges.

LEWIS, Circuit Judge.

The partnership composed of Rutherford Walton and Clarence D. Erickson doing a stock brokerage business under the firm name of The Equitable Securities Company was adjudged bankrupt on December 22, 1934. Appellants filed a petition with the referee on August 3, 1935, in which they asked for an order permitting them to file proofs of claims against the estate nunc pro tunc as of a date within six months subsequent to the date of adjudication. The allegations of the petition clearly disclose that appellants were seeking to avoid the limitation of what they believed section 57n of the Bankruptcy Act, as amended, 11 U.S.C. A. § 93(n) barred them from doing. Harry S. Bowman attached his affidavit to the petition in which he stated he had mailed proof of each claim to the referee on April 22, 1935, that they had miscarried, and he produced copies of them. The trustee in a motion setting up the bar of said section 57n asked the referee to issue an order to the petitioners to show cause why the filing of said claims should not be denied. A hearing

was had before the referee, and on August 6, 1935, he issued an order permitting and authorizing the filing of said claims nunc pro tunc as of April 23, 1935. On August 13, 1935, the trustee filed his petition for review of the referee's order. The District Judge reversed the nunc pro tunc order of the referee by his order of October 31, 1936, from which this appeal was taken. The District Judge further ordered and directed that—"the motion of the trustee herein to strike the said claims from the files be and the same is hereby sustained and the said claims of Harry S. Bowman and Bertha C. Bowman * * * are hereby ordered stricken from the record by said Referee, * * *."

No claim whatever had been filed by either appellant within the six months period after adjudication and there is no basis for the contention here, and below, that the claims filed under the referee's order should be taken as an amendment for there is nothing to amend. The statute is prohibitive because the court is given no discretionary power to extend the time.

But a question which occurs to us on reading the record, not presented or argued either below or here, is whether the claims filed by appellants were proofs of creditors' claims. The first paragraph (a) of said section 57, 11 U.S.C.A. § 93(a) says:

"Proof of claims shall consist of a statement under oath, in writing, signed by a creditor setting forth the claim, the consideration therefor, and whether any, and, if so what, securities are held therefor, and whether any, and, if so what, payments have been made thereon, and that the sum claimed is justly owing from the bankrupt to the creditor."

In our opinion the so-called proofs of claims filed by appellants under the nunc pro tunc order disclose that the relation of debtor and creditor between the bankrupt and these appellants did not exist. This is confirmed by the evidence. The relation between Harry S. Bowman and the bankrupt is set forth in the proof of his claim thus:

"That the said Equitable Securities Co., * * *, was, at or before the filing of said petition, and still is, justly and truly indebted to said Harry S. Bowman in the sum of two International Telephone and Telegraph Co. bonds dollars ($——)

"That the consideration of said debt is as follows: On the 1st day of August, 1934, claimant deposited with the said Equitable Securities Company two International Telephone and Telegraph Company bonds, Nos. 6549 and 6896, as collateral security for the purchase of 100 shares of International Telephone and Telegraph Company stock and claimant is entitled to the return of the said bonds or their value as a preferred creditor of the said bankrupt. Or in lieu of the said bonds or their value, claimant makes claim as a preferred creditor to the 100 shares of International Telephone and Telegraph Company stock purchased with the proceeds from the loan on the said bonds if same is in the assets of the bankrupt estate. And if this claim is not allowed as a preferred claim then claimant files same as a general creditor of the said estate."

In the proof of claim filed by Bertha C. Bowman the relation between her and the bankrupt is stated thus:

"That the said The Equitable Securities Co., * * *, was, at or before the filing of said petition, and still is, justly and truly indebted to said Bertha C. Bowman in the sum of One Home Owners' Loan Bond of the value of $100.00 dollars ($——)

"That the consideration of said debt is as follows: On the 7th day of May, 1934, claimant deposited with the said The Equitable Securities Company one Home Owners' Loan Bond, No. T293154D, value $100.00, as collateral security for the purchase of 15 shares of Electric Bond and Share stock and claimant is entitled to the return of the said bond or its value as a preferred creditor of said bankrupt. Or in lieu of said bond or its value claimant makes claim as a preferred creditor to the 15 shares of Electric Bond and Share stock purchased with the proceeds from the loan of the said bond if same is in the assets of the bankrupt estate. And if this claim is not allowed as a preferred claim then claimant files same as a general creditor of the said estate."

After taking testimony the referee made these findings:

(1) On August 1, 1934, Harry S. Bowman gave an oral order to the Equitable Securities Company to purchase for him 100 shares of International Telephone and Telegraph Company stock. He paid no money down but deposited with the company two $1000 International Telephone and Telegraph Company bonds, numbered 6549 and 6896, 5% gold bonds due February, 1955, with all the non-matured coupons attached, as collateral security for the purchase of the stock. The company executed his order, purchasing the stock on August 10, 1934,

the price being $1012.50 plus commissions of $100.

(2) That Bowman had an agreement with the company that the two bonds were not to be sold but to be held as security for the purchase of the stock; that this stock was to be held by the company until there would be a profit, then it was to be sold and the profit turned over to Bowman, and if the two bonds were not sufficient to pay for the stock Bowman was to pay the difference; that the bonds were worth on the day the stock was purchased more than $1012.50, to-wit, $1160, and on the date of adjudications they were worth $1260.

(3) That on August 2, 1934, the company pledged the two bonds with the Albuquerque National Trust & Savings Bank, in Albuquerque, New Mexico, to secure a loan of $600.

(4) The Albuquerque National Trust & Savings Bank sold the two bonds through the National Bank of Commerce, Houston, Texas, on November 10, 1934, for $699.95. Out of these proceeds the bank deducted: principal $600, interest $13.33, postage and insurance 38¢, leaving a balance to the account of the Equitable Securities Company of $86.24.

(5) The inventory of the trustee of the bankrupt estate filed on February 1, 1935, listed, "2M Int Tel & Tel 5s/55."

(6) On September 30, 1935, E. A. Pierce & Co. of New Orleans, Louisiana, wrote the trustee of the bankrupt estate as follows:

"Dear Sir: Anwering your letter of the 24th instant, this is to advise that our records show that we received from Equitable Securities Company, Houston, for their account on September 22nd, 1934, $2000 International Telephone & Telegraph Co. 5% bonds due 1955, Bonds No. 6594 and No. 6896.

"It so happens that bond No. 6896 is still in the possession of our firm but this fact may change at any time since these securities are fungible and we make no effort to retain possession of identical bonds, using any bond on hand as occasion demands.

"Bond No. 6549 is no longer in our possession."

(7) That the trustee's inventory also listed 50 shares of International Telephone and Telegraph Company stock; that the trustee was authorized by an order of this court to sell said stock on August 9, 1935, Bowman

having consented to said sale; and that there was realized the sum of $608.98; and that there are no other claimants of the same class as Bowman to the two bonds.

(8) "I conclude as a matter of law that the Company wrongfully converted said two bonds by permitting them to be sold. That Bowman has successfully identified one bond as being in the possession of the trustee, to-wit: No. 6896; that the other bond in his possession, while not the same number as turned over by Bowman, to-wit: No 6545, is of the same class and denomination although being numbered 6594. It is therefore ordered that trustee surrender to the claimant, Harry S. Bowman, the two International Telephone and Telegraph Company bonds in his possession."

The referee made the following findings as to Harry S. Bowman's testimony regarding Bertha C. Bowman's claim:

(1) That on May 4, 1934, Harry S. Bowman as agent for Bertha C. Bowman his wife gave an order to the National Securities Service, Inc., through its representative C. A. Callender of Santa Fe, New Mexico, to purchase 15 shares of Electric Bond and Share stock; that he deposited with it on May 7, 1934, $100 Home Owners' Loan Corporation bond due July 1, 1951 (giving number of bond); that the National Securities Service Company, Inc., agreed to retain said bond as collateral security for the purchase of said 15 shares of stock and the profits from the sale of the stock would be paid to Bertha C. Bowman; that said bond was retained by the National Securities Service in accordance with that agreement; that subsequent thereto the Equitable Securities Company took over the said order for the said stock and the said Home Owner's Loan bond and carried on the transaction in accordance with the terms and conditions of the agreement between him and the National Securities Service, Inc.; that the Equitable Securities Company sold the bond and purchased with the proceeds of sale the 15 shares of Electric Bond and Share Company corporate stock at $15 per share; and that the said 15 shares were among the assets of the Equitable Securities Company at the time of filing the petition in bankruptcy.

(2) Referring again to the transaction in his own interest he said that he didn't know the market value of his two International Telephone and Telegraph Company bonds on August 1, 1934, the day he turned them over on the purchase of the 100 shares of International Telephone and Telegraph

Company stock, but the market price of the 100 shares of that stock was $1012.50 or 10⅛ a share, and that the market value of the two International Telephone and Telegraph bonds was more on that day than $1012.50; that his two bonds were to be held as collateral on the purchase of the 100 shares of stock and not to be sold under any circumstances; that the inventory on file with the referee showed that the two International Telephone and Telegraph Company bonds were quoted on the date of adjudication in bankruptcy at $1260; that if his telephone and telegraph stock went down in value he was to be notified by the bankrupt and he was to pay the balance in cash; and that under no circumstances were the bonds to be sold.

C. A. Callender testified that he was connected with the bankrupt for a short time and was with that company on August 1, 1934; that he had the following transaction with Harry S. Bowman in connection with two International Telephone and Telegraph bonds numbered 6549, 6896, 5%. He talked with Bowman about the investment. Bowman said he could put up the two bonds providing they were not to be sold. They were collateral on International Telephone and Telegraph stock. Mr. Erickson, a partner in the bankrupt firm, came to Santa Fe. When Erickson came Callender took him in Bowman's office and they explained to him the necessary procedure to make in the transaction. They told Bowman that the bonds would be put up at the bank for a cash loan and then the stock would be bought with this money which was to come from the bank. The bonds would not be sold and as soon as he could realize a profit or sell the stock the bonds would be returned to him providing there was a profit. If not, Mr. Bowman agreed to put up any difference there might be on the loss. In the meantime the Equitable Securities Company went bankrupt, and Mr. Bowman did not get the stock or bonds back. Mr. Bowman would do no business unless it was understood the bonds would not be sold. In reference to the transaction with Harry S. Bowman for Mrs. Bowman, Callender testified that he was connected with National Securities Service, Inc., and also with the bankrupt; that he was manager of the Santa Fe office; that a $100 Home Owners' Loan bond was deposited with the National Securities Service, Inc., as collateral for the purchase of Electric Bond and Share stock; that the purchase was made and later transferred by National Securities Service, Inc., to Equitable Securities Company through E. A. Pierce. He identified National Securities Service receipt for it; that there was no understanding it was not to be sold or hypothecated.

The foregoing is a fair summary of all the testimony bearing on the character of the two transactions between appellants and the bankrupt from which their legal relations must be deduced. Each of the appellants deposited with the bankrupt valuable securities for specific purposes. They have received nothing therefor, and under the orders of the bankruptcy court those securities are now to be used wholly as assets of the bankrupt estate. That conclusion is reached on the basis of their being creditors of the bankrupt estate plus their failure to assert their claims in accordance with section 57n of the Bankruptcy Act, as amended, 11 U.S.C.A. § 93(n), within the time provided therefor. The conclusion is reached on no other ground. We find ourselves unable to agree with that disposition of the controversy. We do not believe they were creditors within the contemplation and requirements of said section, but were rather petitioners for restoration of their own property, a proceeding in equity so far as this record shows; that they were pledgors and the bankrupt pledgee; and that title to that property never passed to the bankrupt or to its trustee in the settlement of that estate. Section 70, Bankruptcy Act as amended, 11 U.S.C.A. § 110; Nauman Co. v. Bradshaw, 8 Cir., 193 F. 350; In re R. B. Rose Co., D.C., 43 F.2d 446; In re Zimmerman, D.C., 4 F.Supp. 801; In re E. W. Hayes & Co., D.C., 12 F.Supp. 130; In re Lathrop, Haskins & Co., 2 Cir., 223 F. 912; In re Irving Whitehouse Co., 9 Cir., 293 F. 287; Rowan v. Harburney Oil Co., 10 Cir., 91 F.2d 122.

Nothing was passed on in the bankruptcy court except a matter of procedure, and, of course, we pass on nothing else than that. It is our opinion that appellants' claims should be treated as petitions for restoration and not within said section 57. There may be grounds of avoidance or defense on the merits not disclosed by the record brought here.

Reversed and remanded.